CUMMINGS et al. v. SUPREME COUNCIL OF ROYAL ARCANUM et al.

(District Court, D. Massachusetts. January 21, 1918.)

No. 816.

1. INSURANCE ☞708—RECEIVERS—APPOINTMENT—PLEADING.

A bill must state plaintiff's, case with such certainty and fullness as to show to what relief he is entitled; therefore a bill against a fraternal insurer, alleging mismanagement, insolvency, and praying for dissolution and the appointment of a receiver, which alleged that plaintiffs were the owners of an interest in trust funds of approximately $3,500,000 held by the insurer, but did not further disclose plaintiffs' interest, is insufficient.

2. INSURANCE ☞707—FRATERNAL INSURANCE—CONTRACTS.

At the time a fraternal insurer incorporated under the Massachusetts laws entered into contracts of insurance, the Massachusetts act to provide for the control and regulation of fraternal benefit societies (St. 1911, c. 628) was in force. Section 24 of such act gives the state insurance commissioner power to investigate the affairs of any fraternal benefit society, and when satisfied that such business is being conducted in an improper manner to present the facts to the Attorney General, who may institute quo warranto proceedings; and section 25 declares that no application for injunction against or proceedings for the dissolution of, or the appointment of a receiver for any such society shall be entertained by any court in the state unless the same is made by the Attorney General. Held that, as the state creating it has the right to provide for the regulation and dissolution of a corporation, such provisions of law became part of the insurance contract between the society and its members, and hence nonresident members, suing in the federal court, could not be granted relief, where the Massachusetts Attorney General did not consent to the dissolution of the society, the appointment of a receiver, or the issuance of an injunction.

In Equity. Bill by Arthur F. Cummings and others against the Supreme Council of the Royal Arcanum and others. Bill dismissed.

Bordman Hall, James A. Tirrell, and Harvey H. Pratt, all of Boston, Mass., for plaintiffs.

Howard C. Wiggins, of Rome, N. Y., and Curtis H. Waterman, of Boston, Mass., for defendants.

HALE, District Judge. The bill alleges that the plaintiffs, Arthur F. Cummings and James E. Upstone, are citizens of New Hampshire, and are acting on behalf of themselves and all others of a like class and similarly situated, contributors to trust funds, thereinafter described, and held by the defendant; that the defendant is a corporation organized and existing under and by virtue of the laws of the state of Massachusetts, and a citizen of that state; that the plaintiffs are owners of an interest in trust funds of approximately $3,500,000 held in trust by the defendant. It is alleged, on information and belief, that the defendant was incorporated in November, 1877, as a so-called secret benevolent and fraternal society and has carried on a so-called fraternal insurance business under a plan, described in detail, substantially as follows: having a Supreme Council, with officials whose duty is to hold designated funds in trust for the benefit of mem-

bers and contributors, and having subordinate lodges through which contributions are collected; that the defendant seeks to do a life in-surance business under the guise of such plan; that, under this plan, assessments are levied, and funds collected, from the members, which funds are turned over to trustees, who hold the funds in trust for the members of the association, to meet its obligations with the mem-bers; that the defendant, through its lodges, has collected large sums of money from the plaintiffs and others of like class, which funds are held in trust for the plaintiffs and others upon the condition that the funds should be held as aforesaid as insurance, trust, or benefit funds, whereby a stipulated sum should be paid to each of the beneficiaries of the plaintiffs, and others of their class; and that the funds should be sufficient at all times to meet the obligations required for such pay-ments as they should mature.

It is further alleged, on information and belief, that the defendant has become hopelessly insolvent; that the trust funds have become greatly impaired, and are insufficient to meet the obligations entered into as aforesaid; that the sufficiency of the trust funds depends upon the continuing of the payment of assessments by old members and the acquiring of new members; that there has been a grossly insufficient number of applicants for new membership, and a failure on the part of old members to continue the payment of assessments, whereby the plan has utterly failed; that it appears from the official returns that the defendant has 157,818 members carrying fraternal insurance of two classes, of which approximately $218,500,000 is under a regular rate, and approximately $58,800,000 is under various options, being the sum of approximately $277,400,000; that to meet this liability the defendant has alleged assets of $3,458,001.78; that it appears from the official returns that during the past year the defendant has lost in membership 83,880 members; that for the month of May, 1917, there have been 3,292 net lapses, 330 deaths, and that the defendant has ac-quired only 73 new members, showing a net loss of 3,549 for the month. The bill alleges also in detail a net result of loss for the month of July, 1917, of 2,880 members, and that such condition has continued for a long time and still continues; that the trust funds have been greatly impaired by doubtful investments; that great loss has resulted from negligence, waste, mismanagement, and wrongdoing of those in con-trol of the defendant; that illegal payments have been made; that paid solicitors have been illegally employed to acquire new members where-by the undertakings of the defendant have failed and become impaired; that the trust funds are in grave danger of being completely wasted and frittered away in the conduct of the pretended insurance business by such management as has been pleaded and by the defective plan of in-surance, and by waste and mismanagement, to the great loss of the plaintiffs; that the trust should be terminated and the funds distributed to the plaintiffs and others entitled thereto.

The plaintiffs further allege, on information and belief, that state-ments in regard to the trust funds of the defendant have been made by it from time to time in such way as to conceal the condition and state of the trust; that the defendant's accounts are complicated and ob-

scure and can be determined only in equity, and should be inquired into by a receiver appointed for the benefit of the plaintiffs; such receiver should have power of control and custody over the trust funds pending the inquiry, and should finally have full power of collection and distribution.

The plaintiffs further aver, on information and belief, that the defendant has now trust funds to the amount of approximately $3,500,-000, which belong to and should be distributed among the plaintiffs and others in like class; that because of the insolvent condition of the defendant, and the danger of the loss of the funds, the defendant should be restrained from making payments and taking the funds from the jurisdiction of the court; and that the plaintiffs have no plain and adequate remedy at law.

The bill prays for an injunction; for the appointment of a receiver or receivers to take possession of the defendant's trust funds, property, and assets; that masters be appointed.; that the trust should be terminated; and the trust funds and assets distributed to contributors and equitable owners.

Since the filing of the bill, Arthur L. Hobart, of Braintree, in the district of Massachusetts, alleged to be a holder of a certificate issued by the defendant in the sum of $500, has intervened as a plaintiff; and the plaintiffs have amended their bill by adding thereto as defendants the Old Colony Trust Company and the Merchants' National Bank, both alleged to be citizens of the district of Massachusetts. These defendants are joined for subsidiary purposes. For convenience, the Supreme Council of the Royal Arcanum, the original and principal defendant, is spoken of in this opinion as the defendant.

The case is now before the court upon the defendant's motion to dismiss the bill of complaint. The defendant assigns 11 grounds for dismissal. It alleges generally that the bill fails to show the plaintiffs to be entitled to any relief against the defendant, and, among other causes, it states, as a reason for dismissal, that the bill shows the relationship between the plaintiffs and the defendant to be that of membership in a Massachusetts corporation; that the legal incidents of such membership are fixed and determined by the laws of Massachusetts; and the bill fails to show any violation of, or failure to comply with, said law; that it shows no effort to secure the relief expressly provided for the plaintiffs, by said laws, at the hands of the insurance commissioner and the Attorney General of Massachusetts; and that the plaintiffs are not entitled to maintain .their bill in the absence thereof.

[1] At the hearing of the cause upon this motion, the learned counsel for the plaintiffs brought to my attention chapter 628 of the Acts of 1911, of the state of Massachusetts, with amendments thereto, entitled "An act to provide for the control and regulation of fraternal benefit societies." He referred especially to sections 24 and 25 of that chapter, and pointed out that the several plaintiffs acquired their interest in the trust funds of the society, or, in other words, became holders of death benefit certificates, while this law, or a law of like effect, was in force. The case has proceeded upon the assumption that

the plaintiffs, in the general statement of their interest in the trust funds, intended to allege themselves to be holders of such benefit certificates, and members of the defendant society, and to have acquired their interest at the time when the law in question existed. The fact was not called to my attention, at the hearing, by either side, that the only allegation of plaintiffs' interest, alleged in the bill, was that "the plaintiffs are owners of an interest in trust funds of approximately $3,500,000 held in trust by the defendant." This statement of interest is obviously too uncertain to form the basis of a decree in equity. It does not disclose what interest the plaintiffs have, or make any substantial averment upon which the court may proceed to a decree. If the plaintiffs rely upon this allegation only, it is obvious that the bill must be dismissed, as stating too vague and uncertain a case to enable the court to found upon it a final and effective judgment; it fails to show that the plaintiffs are entitled to any relief. A bill must state a plaintiff's case with such certainty and fullness as to show to what relief he is entitled. Merwin's Equity, § 917; Huntington v. Saunders (decision by Judge John Lowell) (C. C.) 14 Fed. 907.

[2] Section 24 of the act providing for the control and regulation of fraternal benefit societies gives the power to the state insurance commissioner to investigate the affairs of any fraternal benefit society, and, when satisfied that its business is being conducted in a manner such as is charged by these plaintiffs, to present the facts to the state Attorney General, who, if he shall find the facts to warrant such a course, is then to begin quo warranto proceedings in a court of competent jurisdiction. If, after due notice and hearing, the court finds that the society should be closed, it shall enjoin further business and appoint a receiver to wind up its affairs and distribute its funds. Section 25 is as follows:

"No application for injunction against or proceedings for the dissolution of, or the appointment of a receiver for, any such domestic society or branch thereof shall be entertained by any court in this state unless the same is made by the Attorney General."

Chapter 474, § 19, of the Public Acts of 1898, contains a like provision.

It is contended, on behalf of each of the plaintiffs, that the Massachusetts law, even though it existed at the time of the making of his contract, does not enter into and become a part of that contract, so as to be obligatory on all courts assuming to give a remedy thereon; and that such law does not provide an exclusive method for proceeding against the defendant, for the purpose of closing it and distributing its assets.

The defendant is alleged to have been incorporated under Massachusetts law. At the time of its incorporation the laws of the state provided for the inspection and investigation of its affairs by the insurance commissioner, and for the substantial control and regulation of such corporation by the state authorities, and for its winding up to be effected by the Attorney General, when he should find the circumstances to warrant such course. Many other states have similar provisions relating to such societies. It has been the general doctrine of

the courts that the Legislature of a state has power to provide the method by which the affairs of such societies may be conducted and by which they may finally be closed; and that it may designate the particular officer to initiate such proceedings. It cannot be said, I think, that such legislation is unfavorable to the interests of parties like the plaintiffs in this suit. They are thereby protected from frivolous suits intended to interfere with the proper business of the defendant, or to wreck it while it is pursuing its legitimate business in a proper manner. For many years the courts have recognized the principle that a corporation derives its power from the laws of the state creating it; that such state has the right to determine the powers relating to the government of the corporation and the method of administering and closing it. This doctrine was declared by Chief Justice Marshall in Head v. Providence Ins. Co., 2 Cranch, 127, 167, 2 L. Ed. 229, cited by Chief Justice White, in Royal Arcanum v. Green, 237 U. S. 531, 542, 543, 35 Sup. Ct. 724, 59 L. Ed. 1089, L. R. A. 1916A, 771; Barnitz v. Beverly, 163 U. S. 118, 127, 128, 16 Sup. Ct. 1042, 41 L. Ed. 93. The Circuit Court of Appeals in this Circuit has made pertinent observations on this subject in the Hobart Case recently decided.

Under the decisions of the federal courts, I think it clear that the laws of the state, in force at the time when these plaintiffs made their contract, formed part of the contract, and are obligatory on all courts assuming to act in the premises.

In Dill v. Supreme Lodge, Knights of Honor (C. C.) 226 Fed. 807, the District Court for the Eastern District of Missouri sustained a bill in equity brought by a death benefit certificate holder of a fraternal insurance society to have a receiver appointed and to close the corporation; it being shown that the decrease in membership of the corporation had been continuous for 15 or 20 years, that the defendant was unable to carry out its contracts, that it was impossible to rehabilitate the corporation; and that the state of Missouri had a statute similar to that of the state of Massachusetts which is here brought in question. It also appeared affirmatively that the state of Missouri, acting through the Attorney General, not only had declined to take any proceedings for the purpose of winding up the defendant and protecting the rights of the members thereof, but that the Attorney General, in open court, stated that, so far as the state was concerned, it had no objection to the corporation's being wound up in the federal court. Under that state of facts, the court held that the corporation had no right to object; the provision of the law not having been made for the benefit of the corporation, but having been made for the benefit of the creditors, the state acting as trustee for them.

Upon the facts presented in the Dill Case, it may be assumed, for the purposes of this case, that the federal court in the Missouri district was justified in taking the action it did; and that the Court of Appeals, if the case had been brought before it, would have affirmed such action, and thus have made law binding upon the federal courts. The case before me shows an entirely different state of facts. The Attorney General, acting on behalf of the state, has not appeared and stated that the commonwealth has no objection to the corporation's

being wound up in the federal court. It does not appear that the plaintiffs have ever attempted in any way to get the state officials to proceed against the defendant, or even to inquire into its financial condition, or that the defendant has shown any opposition to such attempt.

In view of the state law upon the subject, the bill presents no facts upon which a federal court is justified in proceeding with a suit in equity to close up the affairs of a corporation like the defendant. At the hearing on this motion, much of the complaint on the part of the plaintiffs was directed to matters pertaining to infirmities in the plan of insurance adopted by the defendant. Whatever the court may think of the soundness of this plan, it must be said that the plaintiffs have availed themselves of the benefits of it; and in this proceeding the court cannot pass upon the soundness or unsoundness of any plan of insurance. It may be said, too, that, however much inclined a court may be to relieve the burdens of certificate holders, it finds no opportunity to do so in this proceeding.

It is, perhaps, too much to say that, in view of the Massachusetts law upon the subject, no case can ever be stated which will warrant a federal court in proceeding with a bill in equity to wind up the affairs of a fraternal benefit insurance society like the defendant. It is enough to say that, in my opinion, no case is stated in this bill in equity to justify a federal court in so proceeding.

In view of this result, it is not necessary to determine the further questions raised by the motion.

The bill is dismissed. The defendant recovers its costs.