STATE v. KNIGHTS OF PYTHIAS OF NORTH AMERICA, ETC.

Opinion delivered February 19, 1923.

1.  INSURANCE—BENEFIT SOCIETY SUBJECT TO AUDIT WHEN.—Under Crawford & Moses' Dig., § 6117, as amended by Acts 1921, p. 472, relating to exemption from supervision by the insurance department of certain fraternal orders, including the Knights of Pythias, *held*, that both the white and the colored orders of the Knights of Pythias were intended, but that the insurance departments of

such orders were expressly excluded from the exemption, and are subject to the audit of the Insurance Commissioner.

2. TRIAL—SUFFICIENCY OF GENERAL FINDING.—On an application by the State for the appointment of a receiver of a fraternal benefit society, where a report was made by the plaintiff for separate findings of fact and law, *held* a general finding of fact and refusal to grant the relief prayed for was a sufficient compliance with such report.

3. INSURANCE—IRREGULARITIES.—Evidence of irregularities in the conduct of the insurance department of a fraternal benefit society *held* insufficient to warrant the appointment of a receiver.

4. INSURANCE — BENEFIT SOCIETY — APPOINTMENT OF RECEIVER. — Though the State's right to supervise fraternal and benefit societies when they engage in the insurance business is universally upheld, the remedy of appointing a receiver is a harsh one, and will not be applied until all other remedies fail.

Appeal from Pulaski Circuit Court, Second Division; *W. B. Brooks,* Judge; affirmed.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, and *F. G. Lindsey,* for appellants.

The court erred in refusing to state in writing its conclusions of fact found separately from the conclusions of law. C. & M. Digest, § 1309.

*T. J. Price, J. R. Booker, Scipio A. Jones,* and *Coleman, Robinson & House,* for appellee.

The judgment of the lower court was correct. 70 Ark. 507; 73 Ark. 418; 85 Ark. 127; 86 Ark. 140; 85 Ark. 1; 102 Ark. 435. The court was correct in its declaration of law. 105 Pac. 411. The evidence was not sufficient to revoke the corporate privileges and to appoint a receiver. No relief could be accomplished by this procedure. 42 Ohio 579; 26 Atl. 1045; 27 Atl. 712; 41 So. 228, 20 L. R. A. 210. The misconduct of managers or trustees is not ground for dissolution of a corporation and appointment of a receiver. 50 Barb. 157; 16 Cal. 145; 30 Iowa 148; 130 Mass. 194; 19 R. C. L. 1320.

SMITH, J. Upon complaint being made to the Insurance Commissioner concerning the management of the Knights of Pythias of North America, South America,

Europe, Asia, Africa, Australia, and the State of Arkansas, a domestic colored fraternal insurance order, that officer caused an audit of its affairs to be made. Authority for this action is conferred by § 6110, C. & M. Digest; indeed, without complaint being made to the Insurance Department, it is the duty of that department to make an examination of the "affairs, transactions and condition" of such organizations at least once every three years.

The accountants representing the Insurance Department made a report, in which they reported that they had not been accorded the cooperation by the order necessary to make a satisfactory audit of its affairs; and the testimony established the fact that the officers of the company did not apparently realize their duty to aid in this audit, nor did they appear to comprehend the extent of the authority of the auditors. Subordinate lodges made complaint of the management of the officers of the order, and, in addition, the grand chancellor, the chief officer of the order, preferred charges to the Insurance Commissioner which tended to show that the finances of the order were being misappropriated. A supplemental audit by the Insurance Department appeared to confirm the findings in the first report; and the Insurance Commissioner turned these reports over to the Attorney General of the State. Upon an examination of these reports the Attorney General commenced an action in *quo warranto* to liquidate the order, under the authority of § 6111, C. & M. Digest.

While the allegations of the complaint were not sustained by the testimony, and the court below made a general finding against the State and dismissed the complaint, we take occasion to commend the Attorney General for his action in instituting this proceeding. It was highly praiseworthy for him to have sought to protect the interests of the members of the four hundred subordinate lodges of the order in the State. The facts, as they appeared to him at the time he instituted the suit, after giving the notice required by § 6111, C. &

M. Digest, warranted that action; but explanations have been made which should have been made to the auditors of the Insurance Department and to the Attorney General himself.

A demurrer to the complaint was overruled by the court below, and it is now insisted that the demurrer should have been sustained. The ground of the demurrer was that the Attorney General was not authorized by the law to institute the proceeding. Section 6117, C. & M. Digest, as amended by act 493, General Acts 1921, page 472, exempts certain named fraternal orders from the list of those orders whose financial affairs the Insurance Department is required to audit. Section 16 of the Act of 1921 is the section which amends § 6117, C. & M. Digest, and this section, as amended, does grant an exemption from the operation of this insurance act to certain named orders, and the Knights of Pythias is among those thus exempted; but the insurance department of that order is excluded from the exemption, and the effect of this exclusion is to leave the insurance department of the Knights of Pythias subject to the law. There appears to be a white order and a colored order, both known as Knights of Pythias, and while the statute contains but one general designation, "Knights of Pythias," we are of the opinion that both orders are embraced in that designation, and that the insurance departments of both orders are subject to audit by the Insurance Commissioner. The demurrer was therefore properly overruled.

The State asked the court to make a number of findings of fact conforming to the allegations of the complaint, but the court refused to make any of these findings, and this refusal is assigned as error, as constituting a refusal to comply with § 1309, C. & M. Digest, which requires the court, upon trials of questions of fact, to state in writing the conclusions of fact separately from the conclusions of law. We think, however, that the court's general finding of fact and re-

fusal to appoint a receiver as prayed for sufficiently complies with the law.

The first declaration of law asked by the State was to the effect that, if, the grand keeper of records and seal, or the committee of the order which audited its books, negligently, carelessly, or fraudulently failed to keep the cashbook, or the duplicate receipt book, and failed to deliver them to the examiner, when called for by the examiner of the Insurance Department, such failure would be transacting business fraudulently within the meaning of the statute. The court refused this declaration, upon the ground that the testimony did not support the finding of fact that the records had been purposely put beyond the reach of the examiner, and we concur in that view. The particular record which was specially desired was the duplicate receipt book. This was a large book, and was not in current use at the time of the audit, and had not been for six months prior thereto, and appears to have been lost during the session of the grand lodge at Hot Springs, where the record had been carried from the general offices in Little Rock. The loss of this record was not accounted for to the auditors of the Insurance Department, and the failure to produce it was one of the irregularities insisted upon by the auditors. It may be said that it now appears that proper records are being kept, and are being properly kept. It may also be said that the funds have all been properly accounted for, and the auditors of the Insurance Department now report the order as 100 per cent. solvent. There appears no reason now to believe that the order has been made insolvent by the misconduct of its officers, or that its funds are being wasted or misappropriated by them.

The auditors of the Insurance Department discovered the fact that the grand keeper of records and seal had mingled his own funds with those of the order. This was, of course, an inexcusable thing to do, and that officer confessed his error and has abandoned his practice. This was done by that officer using money to pay

his private expenses out of money which would be due him on salary. In other words, he was anticipating his salary by using it as it was earned but before it was payable, and it was shown that he never at any time used any more of the order's funds than was due him for salary at the time of such use. This appears to have been the practice of the predecessor of the present incumbent and to have been known to the grand lodge trustees.

Another thing reported to the Insurance Commissioner was that the officers of the order had devoted a portion of the order's charity fund to the defense of certain members of the colored race, not members of the order, who were charged with the commission of a capital offense. It appears that the grand lodge annually appropriated a thousand dollars to be used for general charitable purposes, and there remained $481.65 of this fund, which was appropriated not to the defense of persons accused of crime, but to the members of their families, who were said to be in destitute condition. This cannot be said to have been an improper use of this money, as it was made the duty of the officers of the order to determine who should be the beneficiaries of its charity fund, and it does not appear that they acted fraudulently in the matter.

The most serious charge preferred against the officers of the order was that four of them had conspired with a contractor who had been employed to erect a building belonging to the order in the city of Little Rock, and that the contractor, in consideration of being awarded the contract, had paid each of these officers the sum of $250. This charge was based on the testimony of one of the officers, who said he had been paid that sum of money by the contractor. The other officers emphatically denied any knowledge of this agreement, and the contractor also denied that any such agreement had been made, or that he had paid, or had promised to pay, anything to any one for the award to him of this contract.

In further explanation of this very serious charge it was shown that sharp differences existed between these officials, and each had sought the displacement of the other at the election of officers, and, although much bitterness had been engendered by this contest, no charge of bribery had been made at the grand lodge meeting when the officers were elected, although the alleged bribery preceded the grand lodge meeting. The court below, in refusing to find that the officers of the order had accepted a bribe, evidently discarded the testimony of the officer who gave that testimony. There was no corroboration of his testimony, and much contradiction of it, and we cannot say the court should have found otherwise.

The court was requested to make other findings of fact of less importance, but refused to do so, and, upon the whole case, we do not feel warranted in disturbing the judgment of the court below. There were irregularities which should not have existed, but these appear to have been corrected, and the officers have been taught that the management of the order is not their private business which can be run by them without rendering the account to the Insurance Department which the law requires.

Legislation such as we have is getting to be general among the States, and the right of the State to supervise these fraternal and benefit orders, where they embark in the insurance business, is universally upheld, and, when it is found proper to do so, the right to appoint receivers to take over their affairs will be enforced, and the courts have not hesitated to do so. The courts, however, recognize these statutes as harsh and severe remedies, which will not be applied until all others fail. Note to annotated case of *Supreme Sitting of the Order of Iron Hall* v. *Baker*, 20 L. R. A. 210, 214; *State* v. *Bankers' Union of the World*, 99 N. W. 531; *State ex rel. Attorney General* v. *People's Mutual Benefit Assn.*, 42 Ohio St. 579; *Crombie* v. *Order of Solon*, 27 Atl. 710; *Order of International Fraternal Alliance* v.

*State,* 26 Atl. 1040; *Stendell* v. *Longshoremen's Protective Union Benev. Assn.,* 41 Sou. 228; *French* v. *Gifford,* 30 Iowa 148; 19 R. C. L. 1320 *et seq.*

This insurance order is shown to have nearly four hundred subordinate lodges and a gross annual income of over a hundred thousand dollars, and there are no doubt members who were eligible for insurance at the time of their applications who are no longer so. If the order is put in the hands of a receiver, its usefulness is largely abridged, if, indeed, its existence is not terminated, as the best risks might seek other insurance, leaving the order liable on benefit certificates to the less desirable risks, and the purpose of the law, which is that of protecting the persons insured, would be defeated by the appointment of a receiver.

The judgment of the court below is therefore affirmed.