DISTRICT No. 21 UNITED MINE WORKERS OF AMERICA *v.*
BOURLAND.

Opinion delivered November 9, 1925.

1. PROHIBITION—SCOPE OF WRIT.—The office of the writ of prohibition
   is to restrain an inferior tribunal from proceeding in a matter
   not within its jurisdiction; but it is never granted unless the
   inferior tribunal has clearly exceeded its authority and the party
   applying for it has no other protection against the wrong that
   will be done by such usurpation.

2. RECEIVERS—PENDENCY OF SUIT AS PREREQUISITE.—Pendency of a
   suit is a prerequisite to the appointment of a receiver.

3. RECEIVERS—NECESSITY OF PARTY DEFENDANT.—Since equity acts
   on the person, and not against property, and the appointment of
   a receiver is an equitable proceeding, the court cannot appoint a
   receiver where there can be no legal service of summons against
   the defendant.

4. ASSOCIATIONS—RIGHT TO SUE.—An unincorporated body of men,
   or a voluntary association of persons, cannot be sued in their
   society name, in the absence of a statute to that effect.

5. COMMON LAW—BINDING NATURE OF RULES.—In the absence of
   statute on the subject, the courts are bound by a rule of the
   common law.

6. EQUITY—JURISDICTION OF TORTS.—Equity will not by an orig-
   inal action take jurisdiction of a case involving a question of
   unliquidated damages arising from a tort.

7. ASSOCIATIONS—SERVICE OF PROCESS.—Under Crawford & Moses'
   Dig., § 1098, providing that where a matter is of common or gen-
   eral interest, or the parties are numerous, and it is impracticable
   to bring them all before the court, one or more may sue or
   defend for the benefit of all, *held* that, in a suit by coal operators
   to recover unliquidated damages for injuries to their property by
   wrongs of members of an unincorporated association, the court
   was without jurisdiction to appoint a receiver of such association,
   where no service was had on the members of such association.

8. PROHIBITION—UNAUTHORIZED APPOINTMENT OF RECEIVER.—Members of an unincorporated association were entitled to a writ prohibiting the chancery court from impounding funds of such association, in which they had an interest, where the court had no jurisdiction over members of such association.

Prohibition to Sebastian Chancery Court, Ft. Smith District; *J. V. Bourland,* Chancellor; writ awarded.

### STATEMENT OF FACTS.

This is an application by District No. 21, United Mine Workers of America and certain individuals, who are members of said association, for a writ of prohibition to the chancellor of the Tenth Chancery District of Arkansas to restrain proceedings on a receivership.

The facts upon which the application is made as stated in their petition and admitted are the following:

On the 19th day of June, 1925, the Greenwood Coal Company, Mammoth Vein Colliery Company, and the Backbone Coal Company filed a complaint in the Sebastian Chancery Court for the Ft. Smith District against District No. 21, United Mine Workers of America, certain locals of said Association in Sebastian, Franklin, Johnson, Logan and Pope counties in the State of Arkansas, and certain individuals who are members of said locals.

According to the allegations of the complaint, District No. 21, United Mine Workers of America, is a voluntary unincorporated association which embraces the States of Arkansas, Oklahoma and Texas; said district is a subdivision of the United Mine Workers of America, a voluntary unincorporated association, international in its scope; said district is subdivided into locals which are designated by numbers; each of the individual defendants is a member of said association, and belongs to some one of the numerous locals composing said district; William Dalrymple is president of the defendant district, Gomer Jones, vice-president, M. N. Henson, secretary-treasurer, and Robert Kindrick, James Douglass, James Bell, Frank Manning, and Lawrence Santi, are board

members composing what is commonly called the district executive board. Robert Kendrick is a citizen of Franklin County, Ark., James Douglas and M. N. Henson are citizens of Sebastian County, and the other officers and board members are residents of Oklahoma. The membership of said district in the three States named aggregates several hundred. Said defendants and all other members of said association are engaged in mining coal and working around coal mines in said States. They mine coal and work around coal mines under a contract with the coal operators and their agents and representatives. The members of said association pay dues and assessments which are divided into various funds, known as a general fund, defense fund, etc. The plaintiffs in the original suit are engaged in operating coal mines, and the members of said association have been engaged in mining coal and otherwise working in their coal mines. The members of the association went on a strike and have resorted to threats, intimidations, coercion, violence, and lawlessness to compel the owners of the coal mines to accede to their demands. The members of said association have assaulted and severely injured some of the servants of the plaintiffs. They have damaged and destroyed a large amount of mining property of the plaintiffs.

The prayer of the complaint of the plaintiffs in the original suit is that the defendant district, the individuals named in the complaint, and all other members of said district, and those associated with them, be enjoined from destroying any of the property of the plaintiffs, and from going upon their property and interfering in any manner with their agents and employees. A temporary restraining order, as prayed for in the complaint, was issued by the chancery court on the 19th day of June, 1925.

An amendment to the complaint was filed by the plaintiffs on August 31, 1925. It is alleged in it that, since the issuance of the temporary restraining order, the defendants and their associates have daily violated

the injunction order and have destroyed the property of the plaintiffs.

The Backbone Coal Company states that the defendants and their associates have burned and destroyed the tipple at its mine in Sebastian County, and that it has been compelled to abandon the operation of its mine. It alleges that, by reason of the destruction of its property, it has been damaged in the sum of $30,000.

The Mammoth Vein Colliery Company alleges that it is prevented from operating its mine in Sebastian County, Ark.; that by violence and threats the defendants and other associates prevented the plaintiff from procuring employees to operate its mine, and to prevent the destruction of its property by the accumulation of water; that by reason of said threats it has been prevented from protecting its machinery and pumping the water out of its mine; that the accumulated water has destroyed large quantities of its machinery and mine tracks, and that by reason of the loss of its property it has been damaged in the sum of $35,000.

The Greenwood Coal Company alleges that its officers and employees have been assaulted by the defendants and their associates, and some of them have been forced to leave its employment. As a result of this intimidation, its daily tonnage has been greatly reduced, and it has suffered damages as the result of these lawless acts in the sum of $25,000.

The amendment to the complaint concludes with a prayer, which is as follows:

"Wherefore, premises considered, plaintiffs pray: First: That the court appoint a receiver to take charge of all the funds belonging to said district and due and payable to it by the parties named, and any others not named, and any and all funds belonging to the locals as named, or due and payable to them or either of them.

"Second: That each of the banks and each coal company named herein be required by proper order to turn over any sum or sums in their hands belonging to the

defendant district or any of the locals named herein, also to turn over to such receiver any sums coming to their hands in the future belonging to the defendant district or any of the locals named herein.

"Third: That upon final hearing plaintiff Backbone Coal Company prays that it be given judgment for damages in the sum of $30,000; plaintiff Mammoth Vein Colliery Company prays for judgment in the sum of $35,000; plaintiff Greenwood Coal Company prays for judgment in the sum of $25,000.

"The plaintiffs pray that the sums in the hands of the receiver, or so much thereof that may be necessary, be applied in payment of the judgment here prayed for and cost of this action."

On the same day the chancellor of the Sebastian Chancery Court, Ft. Smith District, appointed a receiver as prayed for by the plaintiffs.

In the order appointing him, the receiver was directed to take charge of any and all sums held for and in behalf of the defendant district or the locals in all banks and coal companies.

The officers of the defendant district and locals named in the amendment to the complaint are ordered to turn over to the receiver all sums in their hands belonging to the defendant district and locals and all sums that may come to their hands in the future.

The receiver is directed to hold these funds until further orders of the court. The receiver is also directed to take charge of the property belonging to the district and the locals and to preserve the same until further orders of the court.

On September 24, 1925, the defendants filed a motion in the chancery court to vacate and set aside the order made by the chancellor in vacation appointing a receiver as aforesaid.

The chancery court overruled said motion, and the defendant excepted to the ruling of the court. Subse-

quently the application for a writ of prohibition was filed in this court, and the chancellor given due notice thereof.

*S. P. Freeling, C. E. B. Cutler* and *Dave Partain,* for appellant.

*Webb Covington* and *Evans & Evans,* for appellee.

*G. L. Grant, amicus curiae.*

HART, J., (after stating the facts). The case not being here on appeal, but upon prohibition, our consideration must be confined to the question of the power of the chancery court to appoint a receiver in a case of this sort. The office of the writ of prohibition is to restrain an inferior tribunal from proceeding in a matter not within its jurisdiction; but it is never granted unless the inferior tribunal has clearly exceeded its authority and the party applying for it has no other protection against the wrong that shall be done by such usurpation. *Russell* v. *Jacoway,* 33 Ark. 191; and *Monette Road Imp. Dist.* v. *Dudley,* 144 Ark. 169, and cases cited.

In the latter case it was also held that the writ of prohibition lies where an inferior court is proceeding in a manner beyond its jurisdiction, and where the remedy by appeal, though available, is inadequate. The court said that the litigant is not bound to submit to the exercise of jurisdiction not authorized by law, even though he has the right of appeal after the exercise of the jurisdiction has been consummated and has resulted in a judgment from which he can appeal. The reason given was that, if the absence of the right of appeal was essential to the issuance of a writ of prohibition, then that remedy would be entirely unavailing in any case; for under our Constitution the right of appeal is granted in all judicial proceedings. In the same section of the Constitution giving the Supreme Court appellate jurisdiction, it is also invested with a general superintending control over all inferior courts of law and equity with power to issue writs of habeas corpus, prohibition, mandamus, quo warranto and other remedial writs and to hear and determine the same. The writ of prohibition is an appropriate

remedy to restrain the exercise of jurisdiction by an inferior court over a subject-matter when. it has none, and over parties where it can acquire none.

It is a principle of elementary law that the pendency of a suit is an absolute prerequisite to the appointment of a receiver, and, unless made in a suit pending, the court is without jurisdiction and the order appointing the receiver is void. Standard Encyclopedia of Procedure, vol. 22, pp. 320 and 323 and cases cited; High on Receivers, 4 ed. § 17; Alderson on Receivers, § 107; 23 R. C. L. §§ 5 and 6; 34 Cyc. p. 28; Clark, The Law of Receivers, vol. 1, § 644; *Harwell* v. *Potts,* 80 Ala. 70; *Merchants & M. Nat. Bank* v. *Circuit Judge,* 43 Mich. 292; *Guy* v. *Doak,* 47 Kan. 236, 27 Pac. 968; *Pressley* v. *Harrison,* 102 Ind. 14, I. N. E. 188; *Winona, W. E. & S. B. Tract. Co.* v. *Collins,* 162 Ind. 693, 69 N. E. 998; *Baltimore Bargain House* v. *St. Clair,* 58 W. Va. 565, 52 S. E. 660; *Jones* v. *Bank of Leadville,* 10 Colo. 464, 17 Pac. 272; *Baker* v. *Backus,* 32 Ill. 79; *Stone* v. *Wetmore,* 42 Ga. 601; *Gold Hunter M. & S. Co.* v. *Holleman,* 3 Idaho 99, 27 Pac. 413; *State* v. *Ross,* 122 Mo. 435, 25 S. W. 947, 23 L. R. A. 534; *Popp* v. *Daisy Gold Min. Co.,* 27 Utah 83, 74 Pac. 426; *Gray's Harbor Com. Co.* v. *Fifer,* 97 Wash. 380, 166 Pac. 770; and *People* v. *Denver Dist. etc.,* 33 Col. 293, 80 Pac. 908.

In this connection we are not unmindful that this court has held that in exceptional cases a court of equity may appoint a receiver before service of summons upon the defendant and without notice to him. *Excelsior White Lime Co.* v. *Rieff,* 107 Ark. 554. This is done on the same principle that an injunction will sometimes be issued before actual service and before actual notice of the application is given. In other words, in such case it must appear that the relief and protection can be given in no other way. Since equity acts on the person, and since the appointment of a receiver is an equitable proceeding, and since equity does not act directly against the

property, the court cannot appoint a receiver where there can be no legal service of summons against the defendant.

In the case at bar an attempt was made to sue District No. 21, United Mine Workers of America and the locals which are unincorporated associations by their society or company names. This court has held, however, that an unincorporated or voluntary association of persons has no legal entity and cannot be sued by its society name. *Baskins* v. *United Mine Workers of America,* 150 Ark. 398.

This is the rule at common law, and it is also conceded that there is no statute in this State changing the common law and authorizing an unincorporated association of persons to be sued in its society name. We are asked to overrule the case last cited under the authority of *United Mine Workers of America* v. *Coronado Coal Co.,* 259 U. S. 344.

There is no Federal question involved in the matter, and consequently no reason why we should overrule our own opinion, except that it is wrong. We think the reasons assigned by the learned Chief Justice for a change of the rule addressed themselves to legislative bodies rather than courts. In the absence of a statute on the subject we are bound by the rule of the common law, which is in no sense opposed to any public policy of the State and which has become a part of the laws of the State. Hence we adhere to our former opinion that an unincorporated body of men or a voluntary association of persons can not be sued in their society name, in the absence of a statute to that effect.

An attempt was also made to obtain service on the defendant under § 1098 of Crawford & Moses' Digest. That section provides that where the question is one of common or general interest of many persons, or where the parties are numerous, and it is impracticable to bring them all before the court within a reasonable time, one or more may sue or defend for the benefit of all.

It will be remembered that this suit originated as an equity proceeding, and it may be here stated that the

section of the statute just referred to is so far as equity is concerned an adoption by the Legislature of the doctrine of virtual representation, which was in accordance with the existing practice of courts of equity. at the time of the adoption of our Constitution.

The case at bar as a primary matter involves tort. This suit was brought in equity by certain coal operators to recover unliquidated damages for personal injuries to their servants and for injuries to their property, which they allege was caused by the wrongs of the members of the unincorporated associations named in the bill and by the individuals named therein. Equity will not by an original action take jurisdiction of a case involving a question of unliquidated damages arising from a tort. *Brown* v. *Wabash Railway Co.*, 96 Ill. 297.

The doctrine is well stated in Story's Equity Jurisprudence, 14 ed., vol. 2, § 1082, as follows:

"It may be stated, as a general proposition, that for breaches of contract, and other wrongs and injuries cognizable at law, courts of equity do not entertain jurisdiction to give redress by way of compensation or damages where these constitute the sole objects of the bill. For wherever the matter of the bill is merely for damages, and there is a perfect remedy therefor at law, it is far better that they should be ascertained by a jury than by the conscience of an equity judge. And indeed the just foundation of equitable jurisdiction falls in all such cases, as there is a plain, complete, and adequate remedy at law."

Professor Pomeroy states the rule as follows:

"Where the primary right of the plaintiff is purely legal, arising either from the non-performance of a contract or from a tort, and the money is sought to be recovered as a debt or as damages, and the right of action is not dependent upon or connected with any equitable feature or incident, such as fraud, mistake, accident, trust, accounting, or contribution, and the like, full and certain remedies are afforded by actions at law, and equity has no jurisdiction; these are cases especially

within the sole cognizance of the law." Pomeroy's Equity Jurisprudence, 3rd ed., vol. 1, § 178.

The text of these learned writers has been followed by this court. In *Dugan* v. *Cureton,* 1 Ark. 31, it was held that the question of damages is purely legal, and that parties can not come into chancery to have their unliquidated damages assessed and set off against a judgment at law. Chief Justice RINGO in discussing the question said: "In this case the appellees do not seek to rescind or avoid the contract of sale, but expressly affirm it, and ask a compensation in damages for the alleged breach of the contract on the part of the appellant, without showing any obstacle whatsoever to their recovery in a court of law, or even alleging that they will suffer a great or irreparable loss or injury by being obliged to resort to a court of law to recover their damages. The question of damages is purely legal, and, if the appellees are warranted in coming into a court of chancery to have their unliquidated damages assessed and set off against the appellant's judgment at law, the like resort may be had to the courts of equity in every case of mutual and independent covenants, especially if one of the parties should sue and recover a judgment at law which the adverse party might pray the court to enjoin and set off with his damages sustained by reason of the breach of covenant or agreement in his favor, and thus the jurisdiction in that class of cases might be effectually taken from the courts of law and transferred to the courts of equity, contrary to what is understood to be the well-defined limit of the jurisdiction of courts of equity."

The distinction between law and chancery was again recognized in *Ewell* v. *Tidwell,* 20 Ark. 136, where it was held that under our Constitution and laws a court of chancery had no jurisdiction to declare a will void for fraud in obtaining it.

Again in *Hester* v. *Bourland,* 80 Ark. 145, the court said that our Constitution divides and parcels the judicial power of the State among the courts named, and that

under it the Legislature can vest chancery courts only
with jurisdiction in matters of equity. Hence it was held
that, election contests for nominations not being matters
of equity, an act of the Legislature attempting to vest
chancery courts with jurisdiction as to them was uncon-
stitutional and void. See also *Gladdish* v. *Lovewell*, 95
Ark. 618; and *Walls* v. *Brundidge*, 109 Ark. 250.

There is nothing in the principles decided in *Horst-
mann* v. *LaFargue*, 140 Ark. 558, which conflict with the
above. In that case, the court held that claimants for
damages arising from torts are within the protection of
statutes against fraudulent conveyances, and are re-
garded as creditors within the meaning of such statutes.
The suit in that case was in the nature of a creditor's bill,
and its primary object was to set aside a fraudulent con-
veyance. The court pointed out that chancery courts al-
ways had had jurisdiction to set aside fraudulent convey-
ances, and that our statute dispensing with the necessity
of obtaining a judgment before commencing a suit to set
aside a fraudulent conveyance simply provided another
means of proving the insolvency of the debtor, which is
an indispensible prerequisite to the granting of the relief
sought. A creditor's bill has always been one of the
favorite subjects of equity jurisprudence, and in a case
where the setting aside of a fraudulent conveyance is the
primary object of the bill, equity, having acquired juris-
diction of the case for that purpose, will settle all the
issues involved and afford complete relief.

As a primary matter, the cause was to set aside a
fraudulent conveyance at the suit of a creditor, and the
assessment of damages was made under the principle
that where a court of equity acquires jurisdiction for
any purpose it will determine the whole cause, although
in so doing it may decide a question which, standing alone,
would furnish no basis of equitable jurisdiction.

The result of our views is that the gist of the action
is a suit in tort for unliquidated damages, and the chan-
cery court had no jurisdiction, and that § 1098 of our
statutes, which is but an adoption of the old chancery

doctrine of virtual representation, is unavailing as a method of obtaining service in a case in equity where there is no jurisdiction of the subject matter.

It follows as a consequence that no service was had or could be had upon the members of District No. 21, United Mine Workers of America and the local union, and the appointment of a receiver in an action against them was a nullity. It cannot well be seen how a court can take from a defendant the possession of property unless it can acquire jurisdiction by service of process.

The next question is whether or not the relators in the petition for the writ of prohibition are in a position to obtain the writ. They are members of an unincorporated association and have an interest in the funds sought to be impounded by the appointment of a receiver. Some of them have been intrusted by their associates with the care and custody of these funds. Hence as interested parties they would have the right to invoke the power of this court in granting a writ of prohibition to prevent the chancery court from impounding its funds by the appointment of a receiver in an action where it could acquire no jurisdiction over the members of the association.

It follows that the writ of prohibition asked for will be granted and the receivership ordered by the chancellor vacated.

SMITH, J., concurs.