GRAND LODGE, A. O. U. W. *v.* ADAIR.

Opinion delivered November 17, 1930.

*A. J. Demers, Bruce T. Bullion* and *Duty & Duty*, for appellants.

*Martin & Martin*, for appellee.

SMITH, J.   On October 13, 1930, Fred Adair filed a suit in the Phillips Chancery Court against the Grand Lodge Ancient Order of United Workmen of Arkansas, hereinafter referred to as the A. O. U. W. or as the Order, and its executive officers and board of directors, the allegations of which are to the following effect.

The A. O. U. W. is a fraternal benefit society, which has for many years conducted a life insurance business, in addition to its fraternal work.   The insurance branch of its business is solvent, and if all of its assets derived therefrom were properly accounted for a large surplus fund would be on hand.

The Order, by its Constitution and By-laws, is managed and controlled by the Grand Lodge of said organization, the members of the Grand Lodge being elected by the subordinate lodges and certain officers designated by

the Constitution and articles of incorporation. When the Grand Lodge is not in session, the governing body is the board of directors, a body composed of seven members, who have the general management and control of all business matters. The members of this board, with their official titles, were named, and they were made parties to the suit in their official capacity.

On August 30, 1930, the board of directors of the A. O. U. W. contracted with the National Standard Life Insurance Company, hereinafter referred to as the Insurance Company, to sell all the insurance assets belonging to the Order, and a copy of this contract is attached to the complaint as an exhibit thereto and made a part thereof. This contract has been approved by the Insurance Commissioner of the State of Arkansas, his approval thereof being indorsed on the contract. A copy of the resolution of the board of directors authorizing the sale was attached to the complaint and made a part thereof.

Plaintiff is one of the members carrying insurance in the Order, and alleged that no notice of the proposed sale was given to him or to any other member, and that no action had been taken by the Grand Lodge authorizing the sale. The board of directors were without authority to sell the assets of the Order in bulk, their only authority being to manage the affairs of the Order in carrying out the purposes for which it was organized.

It was further alleged that the board of directors had delivered to the Insurance Company all the assets of the insurance branch of the Order, and that the Insurance Company has moved a portion thereof out of the State of Arkansas, and are preparing to deliver all the books and records of the Order to the Insurance Company. That by the contract of sale the Order has abandoned its business as an insurance organization, and there is no one in authority to take charge of its assets.

Wherefore, it was prayed that a receiver be appointed to take charge of the books and records now in the hands of the board of directors and "that said re-

ceiver be authorized and directed to institute such suit or suits as may be necessary looking toward the recovery of all assets of the Ancient Order of United Workmen in its insurance branch, to the end that this plaintiff and all other parties in interest may be fully protected,'' and for all other proper relief.

The sales contract, made an exhibit to the complaint, hereinabove referred to, which was designated as a re-insurance contract, contains the following recitals: The A. O. U. W. was organized and chartered and is being operated under the fraternal benefit laws of the State of Arkansas. The Insurance Company was organized and chartered and is transacting business as a legal reserve life insurance company under the laws of the State of Texas.

The Insurance Department of the State of Arkansas has ascertained and declared that there is a deficiency in the reserve funds of the A. O. U. W., and has directed that immediate steps be taken to protect the interests of the policyholders.

The board of directors of the A. O. U. W. has resolved and determined that it is to the best interests of the certificate holders to reinsure the business and the policies held by its members. It was agreed that the Insurance Company should ''take over and reinsure such policies or membership certificates,'' with the option ''to exchange their certificate or policies for any form of life policies issued by the National Standard,'' and in consideration of this obligation it was further agreed that ''The A. O. U. W. shall turn over to the National Standard the original applications and all records pertaining to the certificate or policyholders, together with all books, records, supplies, stationery, furniture, fixtures, apparatus, appurtenances and every item of value and property belonging to and used in the conduct and management of the insurance business of the A. O. U. W.''

Upon presenting this complaint to the chancery court, an order was made in which three citizens were named as receivers, who were directed to take into their

custody the books and records in the hands of the board of directors and that they (the receivers) "shall make and file in the office of the clerk of said court, a complete inventory of all property that may come into their hands as such receivers, with all reasonable dispatch." It was further ordered: "That said defendants and each of them do deliver to said receivers the said property and every part thereof," and that the receivers make report of their proceedings under this order, with such recommendations touching the further disposition of the property as they may think best to subserve the welfare of all parties in interest.

Upon being advised that this order had been made, the defendants gave notice that they would present a motion for the dissolution of the receivership, and this was done. A demurrer to the complaint was also filed, in which it was alleged "that the complaint does not state facts sufficient to constitute a cause of action against the defendants, within the jurisdiction of this court."

The demurrer was overruled, as was also the motion to dissolve the receivership, whereupon this proceeding was instituted to prohibit the chancery court from further proceeding, upon the ground that it was without jurisdiction to do so. A response has been filed on behalf of the court, in which jurisdiction is asserted.

It is conceded that the A. O. U. W. is a fraternal benefit association and, as such, within the purview of act 462 of the Acts of 1917 (Volume 2, Acts 1917, page 2087), which is entitled "An Act pertaining to the regulation and incorporation of Fraternal Beneficiary Associations, Societies or Orders, and other matters pertaining thereto, and repealing all laws and parts of laws in conflict therewith," which act appears as § 6068 *et seq.* C. & M. Digest.

Section 24 of this act appears as §§ 6110 and 6111 C. & M. Digest, and reads as follows:

"Section 6110. The insurance department, or any person he may appoint, shall have the power of visitation and examination into the affairs of any domestic

society. He may employ assistants for the purpose of such examination, and he, or any person he may appoint, shall have free access to all the books, papers and documents that relate to the business of the society and may summon and qualify as witness under oath and examine its officers, agents and employees or other persons in relation to the affairs, transactions and condition of the society. The expense of such examination shall be paid by the society examined, upon statement furnished by the insurance department, and the examination shall be made at least once in three years.

"Section 6111. Whenever after examination the insurance department is satisfied that any domestic society has failed to comply with any provisions of this act, or is exceeding its power, or is not carrying out its contracts in good faith, or is transacting business fraudulently; or whenever any domestic society, after the existence of one year or more, shall have a membership of less than 400 (or shall determine to discontinue business), the insurance department may present the facts relating thereto to the Attorney General, who shall, if he deem the circumstances warrant, commence an action in quo warranto in a court of competent jurisdiction, and such court shall thereupon notify the officers of such society of a hearing, and if it shall then appear that such society should be closed, said society shall be enjoined from carrying on any further business, and some person shall be appointed receiver of such society, and shall proceed at once to take possession of the books, papers, moneys and other assets of the society, and shall forthwith, under the direction of the court, proceed to close the affairs of the society and to distribute its funds to those entitled thereto. No such proceedings shall be commenced by the Attorney General against any such society until after notice has been duly served on the chief executive officers of the society and a reasonable opportunity given to it, on a date to be named in said notice, to show cause why such proceedings should not be commenced."

Section 25 of the act appears as § 6112, C. & M. Digest, which reads as follows:

"Section 6112. No application for injunction against, or proceedings for the dissolution of, or the appointment of a receiver for, any such domestic society or branch thereof shall be entertained by any court in this State unless the same is made by the Attorney General."

It will be observed that the complaint, the allegations of which have been fully set out, contains no charge that either the Insurance Department or the Attorney General of the State has failed or refused to perform any of the duties imposed by the act from which we have quoted. On the contrary, it affirmatively appears, from the recitals in the exhibit to the complaint, that the Insurance Department has discharged the duty imposed by § 6110, C. & M. Digest. The examination there provided for was made, and, as a result of this examination, it was found and declared that "there is a deficiency in the reserve and funds of the Ancient Order of United Workmen," and it was ordered and directed by the Insurance Department "that immediate steps be taken to protect the interests of the membership or the policyholders of the society." It, therefore, affirmatively appears that it was the discharge of the duty imposed upon the Insurance Department which precipitated the sale to the Insurance Company.

It is insisted that this sale was unauthorized and therefore void. But this contention is answered when § 3 of act 493 of the Acts of 1921 is consulted (General Acts 1921, page 472). That section reads as follows: "Section 3. Any stock, mutual or assessment insurance company or association organized under the laws of this State may consolidate or merge with any insurance company or association authorized to transact business in this State; and any such domestic insurance company or association may reinsure in any insurance company or association authorized to transact business in this State any single risk or part of any single risk or

risks which it may assume; but no insurance company or association shall have the power to reinsure its entire outstanding business or any part of its risks, other than a single risk, or to merge or consolidate with another company or association, until the contract therefor, duly authorized by the boards of directors or members, shall be submitted to the Insurance Commissioner and be by him approved as protecting fully the interests of all policyholders. And the Insurance Commissioner shall have full power to make such investigation as he deems necessary of the affairs of both companies interested in such reinsurance agreement or merger before approving or disapproving same; provided, this section does not apply to farmers' mutuals.''

There is no conflict between § 6088, C. & M. Digest and the act of 1921, as the former relates to mergers and consolidations of two fraternal benevolent associations, which did not occur here. If there were a conflict, the act of 1921 would govern, as it is the last enactment.

The writ of prohibition is prayed upon the ground that the action can be mantained only by the Attorney General, and the question presented for decision is, therefore, whether this action may be maintained by one whose only interest is that of a beneficial member holding a policy of insurance. The decision of this question involves the consideration and construction of the sections of the Act of 1917 above quoted.

It may be first said that the act of 1917, *supra,* is not a novelty in legislation. It is said in the brief of counsel for petitioners that this is the act which is commonly known as the New York Conference Bill, and that it has been enacted by the Legislatures of thirty-seven states, and that its purpose is to secure uniform legislation in the supervision and control of fraternal benefit societies, such as the A. O. U. W.

The constitutionality of the act is not questioned, but it has uniformly been held constitutional in all the cases where the question was raised, upon the theory that it was a valid exercise of the right of the states to

determine the powers relating to the government of corporations, and the method of administering and closing them.

We have had two cases, in both of which the constitutionality of the act was assumed, without any discussion of that question. *State* v. *Knights of Pythias*, 157 Ark. 266, 247 S. W. 1068; *Knights of Pythias* v. *Reinberger*, 168 Ark. 77, 269 S. W. 41.

The first of these two cases was a suit brought by the Attorney General, under the authority of § 6111, C. & M. Digest, to wind up the affairs of a fraternal benevolent association, and while the relief prayed was not granted, his authority to bring the suit was expressly recognized, and the relief prayed was only denied because the testimony did not establish the allegations of his bill.

Our act of 1917 is similar to, and, in many respects, identical with, the legislation of other states relating to these fraternal benevolent associations, and this attempted uniform legislation has had uniform construction by the courts which have construed it, at least so far as the question here involved is concerned.

This construction is to the effect that, where the duty of examination and supervision is imposed upon a department of government, with directions to report the result of the examination to the Attorney General, upon which official the duty is imposed to take such action as may be necessary, under the report, to protect the membership of the Order, an exclusive remedy is provided, and an individual member has no authority, in his own name, to ask for a receivership.

We have not heretofore been called upon to decide this exact question, but we have recognized the principle which other courts have applied. We have here a legislative scheme, which numerous other states have also adopted, for the government of associations of the kind of the A. O. U. W., and a remedy provided whereby the greatest protection may be afforded the membership of such associations. A special department and a State official are clothed with special duties and powers to in-

voke the aid of courts of general jurisdiction in the discharge of these duties. In the case of *Wallace* v. *Hill,* 135 Ark. 353, 205 S. W. 699, 701, it was said: ''It is a well established rule that has been often adhered to by this court that where a court exercising general jurisdiction under the Constitution has been given special statutory jurisdiction in certain matters, and the manner in which such jurisdiction is to be exercised is pointed out by the statute, the record of such court must show the jurisdictional facts. The statute in such cases must be strictly pursued, and the jurisdiction must be made to appear in the mode pointed out by the statute. No presumption as to jurisdiction in such cases will be indulged (citing cases).''

That principle is applicable here. The plaintiff here has not attempted to invoke the aid of this regulatory statute, but has proceeded in defiance of it.

In construing a very similar statute the Supreme Court of Minnesota, in the case of *Baird* v. *Modern Samaritan,* 162 Minn. 274, 202 N. W. 498, 499, said: ''Thereunder members with grievances may no doubt appeal to the Insurance Commissioner for redress. Should he refuse, they still have the opportunity under § 3482 to convince the Attorney General of his duty to proceed. Unless dissatisfied members of a fraternal insurance association are able to induce either the Insurance Commissioner or the Attorney General to move to rectify the conduct of the association or its governing body as to its business or methods, we think they can have no redress through the courts. Good reasons readily suggest themselves for the enactment of § 3482. In associations of this sort every one insured is a member. If any dissatisfied or disgruntled member on his own motion may drag the association and its governing body into court as to the conduct of its business or methods of procedure, its usefulness will be seriously impaired and its very existence endangered. The mere fact that an action is brought affects the standing of such an association without regard to whether or not any basis exists for so doing.''

We are not required to go to this extent to award the writ of prohibition here prayed, nor are we called upon, under the allegations of the complaint before us, to say what remedy an individual member might have upon a showing made that the officials of the State had failed or refused to perform their duties. We have here a case where the duty imposed by law has been performed by the Insurance Department, and action has been taken under his approval to protect plaintiff and other certificate or policyholders.

The cases on the subject are too numerous to review, but they are uniform in their holding.

The case of *Lowery* v. *State Life Ins. Co.*, 153 Ind. 100, 54 N. E. 442, was one in which a policyholder sought to secure an injunction against certain contracts, and numerous acts of wrongdoing were alleged. The question of jurisdiction was not raised, but the Supreme Court of Indiana said it was one which raised itself, and it was there held (to quote a headnote in that case) that ''Under act February 10, 1899 (Acts 1899, p. 30), § 17, declaring that no order, judgment, or decree interfering with the prosecution of the business of an insurance company organized under the act shall be made except on application of the Attorney General, the court has no jurisdiction of the subject-matter of a suit brought by another than the Attorney General to enjoin such a company doing certain business.''

See also: 32 C. J., ch. Insurance, § 20, p. 989; Vol. 5, Joyce on Insurance (2d Ed.), § 3598, p. 5946; *Supreme Sitting of the Order of Iron Hall* v. *Baker,* 134 Ind. 293, 33 N. E. 1128, 20 L. R. A. 210, and cases cited in annotater's note; *Howe* v. *Deuel,* 43 Barb. (N. Y.) 504; *Attorney General* v. *Continental Life Ins. Co.,* 53 How. Prac. (N. Y.) 16; *McGarry* v. *Lentz* (D. C.) 9 F. (2d) 680, and *Id.* (C. C. A.) 13 F. (2d) 51; *Cummings* v. *Supreme Council, Royal Arcanum* (D. C.) 247 F. 992; *Grimes* v. *Central Life Ins. Co.,* 172 Ky. 18, 188 S. W. 901; *Young* v. *Equitable Life,* 49 Misc. Rep. 347, 99 N. Y. S. 446; *Greef* v. *Equitable Life,* 160 N. Y. 19, 54 N. E. 712,

46 L. R. A. 288, 73 Am. St. Rep. 659; *Uhlmann* v. *New York Life Ins. Co.,* 109 N. Y. 660, 17 N. E. 363.

The only cases cited by counsel for respondent upon the exclusiveness of the remedy provided by the Act of 1917 are those of *Bastian* v. *Modern Woodmen of America,* 166 Ill. 595, 46 N. E. 1090, and *Treat* v. *Pennsylvania Mut. Life Ins. Co.,* 199 Pa. 326, 49 Atl. 84, 85 Am. St. Rep. 788.

The first of these cases was a suit to enjoin the removal of the principal office of an association from one city to another, a state of case to which such an act as that of 1917 would not apply.

The other case involved the construction by the Supreme Court of Pennsylvania of an act passed by the General Assembly of that State in 1873 in which it was held that the act required the Attorney General to be made a party in suits brought under the act only where the suit is "instituted for the purpose of closing up the affairs of any company," but that "such is not the purpose of this bill," which had been dismissed by the trial court because the Attorney General was not a party.

It appears, therefore, that neither of these cases is out of line with what appears to be the universal holding of the courts.

Respondent insists that the Act of 1917 has no application to this case, for the reason that the A. O. U. W. has, by selling its assets, gone out of the insurance business, but that they are not asking that the Order be closed and its assets distributed.

Whatever the purpose of the lawsuit may be, its effect is obvious. It must, of necessity, end the contract of sale, and thereby terminate the contract of reinsurance and leave the policyholders without the insurance which the contract gives them.

The insistence is that it is desired only to recover the assets of the Order, and that many suits will have to be brought in the name of the receiver to recover these assets. Whether so intended or not, the suit can be

nothing else except one to close the insurance branch of the Order and wind it up. The Insurance Company is a business corporation, and not an eleemosynary institution, and if it is to be expected to assume the obligations of the A. O. U. W., it should have its assets for that purpose, and its contract entitles it to them. The order already made by the chancery court, if permitted to stand, renders this contract impossible of performance, for it directs the receivers to take charge of the books and records, all of which are, of course, essential to the performance of the contract of sale. In the discharge of their duties the receivers will take over the assets, for just what purpose the court's order does not make clear, except that a report thereof will be made to the court, "with such recommendations touching the further disposition of the property in their hands as they may think best to subserve the welfare of all parties in interest."

This order of the court annuls the reinsurance contract made pursuant to the examination of the Insurance Commissioner, which contract was approved by him, and will necessarily wind up the association, whether that is the purpose of the suit or not.

If it be said that the association has, by the sale of its assets, discontinued business, it may be answered that § 6111, C. & M. Digest, still applies, for discontinuing business is one of the grounds which the statute requires the Insurance Commissioner to report to the Attorney General, upon which the latter may proceed to close the affairs of the society and to distribute its funds to those entitled thereto; but, as we have shown, this is to be done at the suit of the Attorney General, and not upon a suit by a member of the association. What occurred here is that the A. O. U. W. has, pursuant to the direction of the Insurance Department and under authority of law, made a contract of reinsurance, which cannot be annulled at the suit of a policyholder who has ignored the instrumentalities provided by law to protect the large interests involved.

We conclude, therefore, that the chancery court is without jurisdiction to proceed, and the writ of prohibition will be awarded and the order appointing the receivers will be vacated.

HART, C. J., (concurring). According to my view, the allegation of the complaint that the contract of sale of all the insurance assets of the defendant company with the approval of the insurance commissioner of the State of Arkansas indorsed on the back thereof, when read in connection with the charges of fraudulent conduct on the part of the officers of the company, is equivalent to an averment in pleading of the refusal of the officers, whose duty it was to bring suits like this to act in the matter; and thus gave the plaintiff, as a member of the company, the right to bring the suit under the principles of law decided in *Griffin* v. *Rhoton,* 85 Ark. 89, 107 S. W. 380, and *Gladish* v. *Lovewell,* 95 Ark. 618, 130 S. W. 579. It seems to me that the suit is merely one for the appointment of a receiver, and it has been well said that there is neither in law nor in equity any such thing as a plain receivership action.

As I read the complaint filed in the chancery court upon which the application for a receiver is based, the plaintiff seeks the appointment, not as an aid to some equitable ground of relief, but as an independent right. Such suit cannot be mantained where the basis of equity jurisdiction alone is the appointment of a receiver, but there must be equity jurisdiction independent of the application therefor. In short, the appointment of a receiver by a court of equity, except perhaps in rare cases arising out of insanity or infancy, is ancillary to some other action having some definite equitable grounds of relief in view. 34 Cyc. ch. 30; 23 R. C. L. p. 11; High on Receivers (4th ed.) § 5, p. 9; Tardy's Smith on Receivers (2d ed.) vol. 1, § 5, p. 58; *District No. 21, United Mine Workers of America* v. *Bourland,* 169 Ark. 796, 277 S. W. 546; and *Pusey & Jones Co.* v. *Hanssen,* 261 U. S. 491, 43 S. Ct. 454, 456, 67 L. ed. 763.

698

As stated by Mr. Justice Brandeis in the case last cited: "Whether the debtor be an individual or a corporation, the appointment of a receiver is merely an ancillary and incidental remedy. A receivership is not final relief. The appointment determines no substantive right, nor is it a step in the determination of such a right. It is a means of preserving property which may ultimately be applied toward the satisfaction of substantive rights."

Under the allegations of the complaint, no rights between the parties are sought to be settled. The contract of sale is not asked to be set aside; and no relief is even asked against the alleged fraudulent acts of the officers, sanctioned and approved by the insurance department. It seems to me that the appointment of a receiver is not ancillary to any ultimate relief between the parties, but that the appointment is the sole object to be accomplished, and no ground of equitable relief otherwise is stated in the complaint. Therefore, I think that the chancery court proceeded without jurisdiction and that the writ of prohibition should be granted.

Mehaffy, J., dissents.