## Grimes, et al. v. Central Life Insurance Company.

(Decided November 1, 1916.)

### Appeal from Fayette Circuit Court.

1. Statutes—Remedies.—Where a right exists by the common law and there is a remedy for a violation of that right by the common law, and a statute provides another remedy, it is not exclusive of the common law remedy, unless the one created by statute is expressly or by implication made exclusive by the statute.

2. Statutes—Remedies.—If the right is a new one, created by statute, and a remedy for its violation is provided by the statute, then the remedy provided by the statute is exclusive of any other.

3. Statutes—When Remedy Granted by Statute Exclusive.—If a remedy is created by a statute, and it is not expressly declared to be exclusive, and is inadequate for the purpose, it will not be implied, that it is exclusive and the ordinary processes of the law may be resorted to.

4. Statutes—Construction.—The purpose in construing a statute is to ascertain the intention of the legislature and to declare it.

5. Statutes—Construction.—The language of the statute is the best means of determining its meaning, and a statute will not be held to change the law, other than what it says, or may necessarily be implied from the language.

6. Statutes—Construction.—When the language of the entire statute is taken under consideration, the facts of common knowledge, the history of the times, the evils to be remedied, the objects to be promoted, the law at the time, and the result of different constructions of the statute may be looked to, to assist in resolving any doubt as to its meaning.

7. Insurance—Suit by Stockholder for Appointment of Receiver—Manner of Procedure.—A stockholder, policy holder, creditor or one pecuniarily interested in an insurance corporation, under article IV, chapter 32, Kentucky Statutes, can not maintain an action for the purpose of having the assets of a life insurance company put into the hands of a receiver, its affairs settled and its assets distributed, where five or more persons who are pecuniarily interested in the corporation have not filed an affidavit with the insurance commissioner stating their belief that the corporation is unsound and the specifications of their grounds for such belief, as provided by section 752, Kentucky Statutes.

8. Insurance—Action For Appointment of Receiver—Settlement.—The manner of procedure provided by section 752, Kentucky Statutes, for the appointment of a receiver for and the settlement of the affairs and distribution of the assets of a domestic insurance corporation, is exclusive of any other procedure for such purpose, until denied; except in the case of a majority in number or interest of the stockholders, as provided by section 628, Kentucky Statutes, and except in the case provided for by section 677, Kentucky Statutes, which relates to co-operative or assessment life insurance companies.

MAURY KEMPER and FORMAN & FORMAN for appellants.

JOSEPH S. and GEORGE C. WEBB and H. V. McCHESNEY for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellants, who were stockholders and one of whom was a policyholder in the appellee, the Central Life Insurance Company, instituted this action in the circuit court of Fayette county against the appellee,

which was a regular life insurance company, and organized under the statutes of this state. The relief sought was the appointment of a receiver for the company, the settlement of its accounts, and a winding up of its affairs, and a distribution of its assets among its creditors, policyholders and stockholders, according to equitable principles. The grounds set out in the petition for the relief sought were the fraudulent mismanagement of its affairs and the fraudulent conduct of its business, in ways contrary to law, by the officers and directors of the corporation, and resulting in insolvency. A demurrer was sustained to the petition as amended, and the appellants declining to plead further, the action was dismissed. The soundness of the judgment of the circuit court in sustaining the demurrer is the question for decision upon this appeal. It is not contended that the averments of the petition, as amended, were insufficient to support the action for the appointment of a receiver and a settlement of the affairs of the corporation, if the appellants had a right of action for such purpose, and the circuit court adjudged the demurrer to be well taken upon the sole ground that the appellants were not authorized by law to maintain an action for the relief sought, that is the appointment of a receiver and the settlement of the affairs of the corporation, and the distribution of its assets, but that the Insurance Commissioner, alone, had such right. There was no averment in the petition to the effect, that five or more persons, who had a pecuniary interest in the corporation, had requested the Insurance Commissioner to make an examination of the corporation, and had filed with him their affidavit that they believed it to be unsound, and with specifications of the grounds of their belief, before the action was instituted, or that the Commissioner had refused or failed to take action.

It is contended for appellee, that under the statutes relating to insurance, the right to maintain an action against an insurance company for the appointment of a receiver is exclusively a right of the Insurance Commissioner, and that neither a policyholder, a creditor nor a stockholder is authorized to maintain such an action; while for the appellants it is contended, that the statute, which authorizes the Commissioner to maintain such an action is only a cumulative remedy, and that it did not divest the creditors and stockholders of an insurance

company of their common law right to maintain such an action upon such grounds as authorized them to do so under the common law.

It may be conceded, that, according to the common law, a policyholder or creditor of an insurance corporation, upon the ground of insolvency of the corporation, alone, and a stockholder, where the unlawful and fraudulent mismanagement of the corporation by its officers threatened it with insolvency, or it has become insolvent from such mismanagement, could maintain an action for the appointment of a receiver. Having this right at the common law, they would not be divested of it, except it be done by a legislative enactment. Having the right, they could proceed by the same remedy as any other creditor or stockholder of any other kind of a corporation could proceed, unless the legislature has forbidden them the use of that remedy and provided another. The well established rule is, that where a right exists by the common law, and there is a remedy for a violation of that right by the common law, and the statute provides another remedy, the one provided by the statute is not exclusive of the common law remedy, unless the one created by the statute is expressly or by implication made exclusive by the statute. Wells v. Steele, 31 Ark. 219; People v. Craycroft, 2 Cal. 243; Washington, etc. v. State, 19 Md. 239; Bellant v. Brown, 78 Mich. 294; State v. Bettinger, 55 Mo. 596; McKay v. Woodle, 28 N. C. 252; Goodrich v. Milwaukee, 24 Wis. 422.

If the right is a new one created by statute, and a remedy for its violation is provided by the statute, then the remedy provided by the statute is exclusive of any other. Russell v. Muldraugh's Hill C. & C. Turnpike Road Co., 13 Bush 307; Ky. River Navigation Co. v. Com., 13 Bush 435; Roberts v. Landecker, 9 Cal. 262; Butler v. State, 6 Ind. 165; Ryan v. Ray, 105 Ind. 101; Chandler v. Hanna, 73 Ala. 390; Cole v. Muscatine, 14 Iowa 296.

If a remedy for the violation of a right is given by statute, and it is not expressly declared to be exclusive, no implication will arise that it is intended to be exclusive, where it is inadequate for the purpose, and in such cases the ordinary processes of the law may be resorted to. Johnston v. Louisville, 11 Bush 527; Fletcher v. State Capitol Bank, 37 N. H. 369; Murriam v. Moody, 25 Iowa 170.

Adhering to the above stated principles, it will be necessary to consider the nature, extent, scope and intention of the legislation upon the subject of insurance companies, to determine whether by this legislation the right of a creditor, policyholder or stockholder, upon sufficient grounds to maintain an action against an insurance company for the appointment of a receiver, has been taken away by the statute, and a new remedy provided for a violation of his rights, which is adequate. The purpose, of course, in construing a statute is to ascertain the intention of the legislature in enacting it, and to declare it. The interpretation of a statute, which is in accordance with the legislative intent, is necessarily a correct interpretation. As has been often declared, the language of the statute is the best means of determining its meaning, and it should be always borne in mind, that a statute should not be held to make any change in the law, other than what is said or necessarily implied from the language of the statute. 36 Cyc. 1106, 1145.

When the language of the entire statute is taken under consideration, the facts of common knowledge, and the history of the times, at the time of its enactment, the evils to be remedied, and the objects to be promoted, the state of the laws at that time, and the results which would follow from different constructions may be looked to to assist in resolving any doubt as to its meaning. 36 Cyc. 1136, 1137, 1145.

At the time of the adoption of the present legislation, which relates to the organization and control of insurance corporations in this state, the business of organizing and conducting insurance companies was a fruitful field for adventurers, whose zeal and ability to sell stock and policies in the companies, in many instances, far exceeded their zeal in the purpose to conduct the business along lines, which would insure a return to the stockholders or the beneficiary of the policy. The inevitable result was, that the enterprise apparently flourished for a short time and then it collapsed, and trusting stockholders and policyholders reaped nothing, except experience, while the promoter of the enterprise betook himself to a climate that was more congenial, and another field which had not been theretofore worked in the same manner. Representatives of insolvent companies, both foreign and domestic, and representatives of companies, whose officers and directors, under the forms of law, fraudu-

lently squandered the assets of the company, sold policies of insurance to the citizens, who very soon thereafter learned, that instead of having made a provision for his family or his own old age, he had made a donation to some individual or indviduals, whose identity he could never learn. Other companies were organized and conducted with apparently no real purpose except to furnish their officers with salaries, which were far above any reasonable compensation for their services. These companies never paid any dividends nor accumulated any surplus. Upon the other hand, reputable young companies, which were struggling honestly for existence, and with fair sailing would have succeeded and been of material benefit and assistance to the public at large and their stockholders and a boon to the policyholders, were wrecked by a stockholder, who was dissatisfied because he was not an officer or director, or possibly from some mistaken conception of the true facts; or by a litigious adventurer, bent on spoils, by the institution of repeated suits for the appointment of receivers and distribution of the assets. The public became suspicious and lost faith in their solvency, and this, added to large bills for costs in defending the actions of irresponsible persons against them, soon sounded their death knells. The insurance companies, in the manner of doing business and the habits of the people, had become necessary institutions. The success or failure of them affected the stability of the business and financial interests of the community. They were public in their character, and affected the transactions and well being of many individuals, and through them, the entire public. The habit of insurance became so general, that it was necessary for the state, as a government, to take an interest in promoting the welfare of the companies, as well as the protection of the citizens. It was apparent that the existing laws were entirely inadequate for either promotng the well being of the insurance companies or for the protection of those who had transactions with them. We must assume that the legislature knew the laws that then existed, and the circumstances of the times, and when it enacted the present statute laws, it had the intention to make a change of the laws to effect a remedy for the existing evils, as well as to promote the welfare of honest corporations in the business of insurance.

Hence, the legislature enacted a statute, which became a law on April 5th, 1893, and which, with its amendments, now composes a part of Article IV., Chapter 32, Ky. Statutes. One section of the act of April 5th, 1893, is now Section 744, Ky. Statutes, and is as follows:

"There is hereby established in connection with the office of Auditor of Public Accounts a department to be designated the Insurance Department, which shall be charged with the enforcement of the laws heretofore passed, or which may hereafter be passed relating to insurance."

At the same session of the General Assembly, on May 22nd, 1893, a law was adopted on the subject of assessment or co-operative fire insurance, which, with its amendments, is now subdivision V., of Article IV., of Chapter 32, *supra.*

An act, which became a law on April 14th, 1892, relating to fidelity insurance, is now subdivision VI., of Article IV., of Chapter 32, *supra.*

Subdivision VII., of Article IV., Chapter 32, *supra,* was an act of the General Assembly, which became a law on March 19th, 1894, and relates to real estate title insurance.

Subdivisions I., II., III., IV., and VIII., of Article IV., Chapter 32, *supra,* are substantially as adopted by the General Assembly on April 5th, 1893. Certain amendments have since been adopted to certain sections, but nothing has been adopted in the way of amendments, which in any way effects the determination of the question in the instant case.

Article IV., of Chapter 32, *supra,* contains one hundred and fifty separate sections, and many of the sections are composed of a number of subsections, and it is impossible within the limits of an opinion to advert to these separate sections or their provisions.

The act of April 5th, 1893, was very comprehensive in its scope, and was evidently intended to be a law by which all kinds of insurance companies should be organized, regulated and controlled, and the two acts above mentioned, which have been adopted since that date, relating to co-operative or assessment fire insurance and real estate title insurance contain provisions similar in their requirements, so far as relates to the administration of their provisions, to the act of April 5th, 1893.

The legislature, by the enactment of the law of April 5th, 1893, intended to vest the control, regulation, supervision and execution of the provisions of that law, and everything relating to insurance companies in the Insurance Department of the State government. The act contained one hundred and one sections, and by its provisions, the manner of organization was specifically defined; their powers were defined; provisions for their visitation and examination were particularly set out; securities for the safety of their policyholders and stockholders were provided for; reports and statements were required from them to the Insurance Department, which would fully and in detail exhibit their assets and liabilities; penalties were imposed for the failure of the companies, their officers and directors to observe the laws; and a means for putting them in the hands of the courts and their receivers, and the settling up of their affairs, when the interest of those pecuniarily interested in them became necessary. The same requirements of the companies and the same powers were given to the Insurance Department with reference to co-operative fire insurance companies and real estate title insurance companies by the two acts, *supra*, specially relating to those kind of insurance companies, which were enacted since the law of April 5th, 1893. By the provisions of the latter act, the manner of the execution and the specifications of the articles of incorporation were provided for; that a copy should be filed in the office of the Insurance Commissioner and one in that of the Secretary of State; that the Commissioner should submit the articles to the Attorney General, for his opinion as to whether or not they were prepared in accordance with law; that the Commissioner should examine or cause an examination to be made into the affairs of the proposed corporation to ascertain whether it had complied with all the requirements of law; the investment of its funds; the requisite stock and premiums, and all other things which it is required by law to have and to do, before becoming a corporation and authorized to do business, according to the purport of the articles; and when he should be satisfied that the requirements of the law have been complied with, to issue it a certificate, by which it was authorized to commence business; if a life insurance company, on the regular plan, the Commissioner should designate the ones authorized to open books and receive

subscriptions for stock, or if upon the mutual plan, to designate the persons to open the books and to receive propositions and make agreements as provided by law. If the corporation desired to increase or decrease its capital stock, it could not do so, until the Commissioner should make an examination and be satisfied, that the rights of persons, doing business with it, would not be prejudiced. The corporations were required to make annual reports to the Commissioner, which would show in detail the assets, liabilities and their entire affairs, and the Commissioner could revise the forms of the statement and require other information, if it was necessary to a full exhibit of the business standing of the corporation, and require answers under oath to his inquiries, and to extend the time of making the statements, if necessary, and could revoke the licenses of the agents of any company, which refused to answer his inquiries. If a majority in number or interest of the stockholders petitioned a court for a dissolution of a corporation, the reports of the receivers must be referred to the Commissioner, who should report any errors or omissions, and receivers must report to him annually on or before the sixteenth of March, and at such other times, as he might require. A foreign insurance company may not do business until it has filed with the Commissioner a copy of its organic law, and has obtained a license from him to do so. The Commissioner grants license to the agents of the insurance companies to transact business for them, which he cannot give to the agents of a foreign corporation, when it has not fully complied with the law and maintained its reserve. The insurance companies must deposit with the Treasurer, securities, to insure the interests of the policyholders, which are appraised by the Commissioner, and, if any deficit, in the amount required, is found, at any time, he requires it to be made up or revoke the company's authority to do business. The Commissioner supervises the withdrawal of the securities and the substitution of others for them, or when the obligations of the company have been discharged, permits them to finally withdraw them. If an insurance company is not proceeding according to law, the Commissioner may withdraw its authority to do business and revoke the licenses of its agents. He has authority, at any time, to examine the affairs of the insurance corporations. The above and many other provisions are

contained in the statute, which are intended to safeguard the interests of the creditors, policyholders, and stockholders of the insurance corporations. Penalties are prescribed for a failure of the corporations and their agents to observe the laws, and upon the Commissioner for a dereliction of his duties. In addition to the various remedies given to the Commissioner, by which he can correct the failures of a corporation or its officers in performing their duties and obligations, it is provided by Sections 676 and 677, that if a co-operative or assessment life insurance company shall fail, for thirty days after it is due, to discharge an obligation incurred to a policyholder, and after proper demand, the Commissioner shall order the corporation to suspend business until the payment is made, and money received by the corporation after that notice must be deposited in a bank, to await disposition, to a final decision of the matter. The Commissioner must then proceed without delay to make an examination of the affairs of the company, and if he finds that its liabilities exceed its resources, and that it cannot within three months from the default pay all of its debts, he shall report to the Attorney General, whose duty it is upon such report to at once institute an action for the appointment of a receiver and a distribution of its assets among its creditors.

By the provisions of Section 690, if the officers of an insurance company, other than a life insurance company, make a dividend other than from the surplus profits arising from its business, such dividend subjects the company to a forfeiture of its charter, which is to be enforced by a proceeding in the nature of a *quo warranto*, by the attorney for the Commonwealth, in any county where the company has an office or transacts business.

For the penalties denounced by the statute against the companies, their officers and agents, for violations of the law, it is provided by Section 754, that if the Commissioner be of the opinion that such penalties have been incurred, he shall report same to the Attorney General, whose duty it shall be, if he thinks proper, to institute prosecutions against the guilty ones therefor.

By Section 628 a majority of the stockholders in number or interest may by petition apply for a dissolution of an insurance corporation to any court having chancery jurisdiction, in the county where the corporation is located, and for reasonable cause, the court may decree

the dissolution, and if necessary for winding up and settling the affairs of the corporation, may appoint receivers for the assets and make such other decrees as equity may require.

Section 745, provides that the Auditor may appoint an Insurance Commissioner, who shall hold his office until the expiration of the term of the Auditor. The Commissioner may appoint a deputy, and with the consent of the Auditor, such clerks as may be necessary to assist him in his duties, and shall execute a bond with sureties, to be approved by the Auditor, who are worth in the aggregate, the sum of twenty-five thousand dollars, conditioned for the faithful performance of his duties. In addition to the great number of duties required of him by the laws relating to insurance and the many powers vested in him, he is required by the provisions of Section 752, Ky. Statutes, and which is a part of the act of April 5th, 1893, as follows:

"As often as once in four years, he shall personally or by his deputy or chief clerk, or by some competent person appointed by him for the purpose, visit each domestic insurance company and thoroughly inspect and examine its affairs, especially as to its financial condition and ability to fulfil its obligations, and whether it has complied with the laws. He shall, also, make an examination of any such company whenever he deems it prudent to do so, or upon the request of five or more of the stockholders, creditors, policyholders or persons pecuniarily interested therein, who shall make affidavit of their belief, with specifications for their reasons therefor, that such company is in an unsound condition. . . . . . . For the purposes, aforesaid, the Commissioner, or his deputy or person making examination shall have free access to all the books and papers of an insurance company that relate to its business and to the books and papers kept by any of its agents, and may summon and qualify a witness under oath, and examine the officers, directors, trustees and agents of any such company, and other persons in relation to its affairs, transactions and conditions. . . . . ." A penalty of not exceeding one thousand dollars or imprisonment not exceeding one year is denounced against any one who refuses to appear and testify or obstructs the Commissioner in the performance of his duties, and if the directors, officers or agents of a foreign insurance company refuse to appear

or testify when required, the Commissioner shall revoke
the license of the company

Section 753 provides in part as follows:

"If, upon examination, he is of the opinion that any
domestic insurance company is insolvent, or has exceed-
ed its powers, or has failed to comply with any provis-
ions of law, or that its condition is such as to render its
further proceedings hazardous to the public or to its
policyholders, he shall revoke or suspend all licenses is-
sued to it or agents, and cause notice thereof to be pub-
lished in some newspaper of general circulation in the
state; and it is hereby also made the duty of the Com-
missioner to immediately notify the general agents of
the foreign or domestic company suspended of the sus-
pension, and it shall be the duty of said agents to imme-
diately notify persons insured by them of such suspen-
sion by the Commissioner, and for failure so to do upon
the part of the Commissioner or agent, he shall be fined
not less than fifty nor more than one hundred dollars for
each offense; he shall, also, apply to the judge of the
Franklin circuit court, or the judge of the circuit court
where the company is located, to issue an injunction re-
straining it in whole or in part from further proceeding
with its business. Such judge may, in his discretion,
issue the injunction forthwith, or upon notice and hear-
ing thereon, and after a full hearing of the matter may
dissolve or modify the injunction or make it perpetual;
and may make all orders and decrees needful in the prem-
ises and may appoint agents or receivers to take posses-
sion of the property and effects of the company, and to
settle its affairs, subject to such rules and orders as the
court may from time to time prescribe, according to the
course of proceedings in equity. . . . ."

When a suit for a receiver has been instituted by the
Commissioner, and upon the final disposition of the case
it appears, that there did not exist reasonable grounds
for obtaining any injunction, which may have been
granted in the action, then the Insurance Department
must pay the costs of the proceedings. It will be ob-
served that among the remedies provided for in the
statute there is none provided by which a less number
than one-half, in interest or numbers, of the stockholders
can maintain a suit for a dissolution of an insurance cor-
poration, and its consequent placing in the hands of a
receiver. The remedy of placing the assets in the hands

of a receiver and the settlement of its affairs and a dis-
tribution of its assets at the suit of a policyholder is not
provided for at all.   The remedy provided for by ap-
plication to the Insurance Commissioner may be made
use of by not only the stockholders and  policyholders,
but by creditors, and by any persons pecuniarily inter-
ested in any way, whatsoever, in the corporation.   The
Commissioner has power to make the examination pro-
vided for and to institute the necessary proceedings for
a receiver and a settlement of the corporate affairs upon
his own initiative.   If he does not do so upon his own
initiative, he can be required to do so; if as many as five
persons who are pecuniarily interested in the company
take the steps provided for by the statute.   It is scarcely
conceivable that the assets of  an  insurance  company
should be justly entitled to be put into the hands of a
receiver, the company dissolved and its assets distrib-
uted, when five persons of those pecuniarily interested in
it, cannot be found, who will request it.   Neither can we
assume that a public official, as the Insurance Commis-
sioner, will not do his duty.   The statute is a very salu-
tary one and designed for the protection of all persons
who have a pecuniary interest in the company, and, also,
the public.   If the prejudice to the interest of those pe-
cuniarily interested is sufficiently threatened, that five
of them will take the steps necessary to set in motion
the machinery of the law, it may be done without the
ones active in the matter, subjecting themselves to special
costs.   They have the advantage of an examination of the
affairs of the company by persons who are competent for
that purpose, and a laying bare and a presentation of
the facts in a way which can be fully understood, as well
as the opinion of a disinterested official, with all the
facts before him, as to the soundness or unsoundness of
the corporation.   If it is developed that the apprehen-
sions of those who set in motion the machinery of the
law, were groundless, they may stop at that point with-
out further useless and expensive litigation.   The com-
pany and through it all those pecuniarily interested are
benefited in the assurance that it is financially sound, and
useful, as an institution, to the public.   If the motives of
those causing the investigation are mercenary or ma-
licious, they will be deterred from further proceedings.
If grounds are developed, which will justify the closing
of the concern and a distribution of its assets, all pecu-

niarily interested have then the advantage of the pro-
ceedings by the Commissioner, which are as expeditious
and inexpensive, as the law provides, for proceedings by
any other. The design of the statute was to subserve
the above mentioned useful ends, to prevent groundless
assaults upon the corporation and to conserve the inter-
ests of those pecuniarily interested in it, by preventing
its assets from being wasted in costly and useless litiga-
tion. While the statute does not expressly take away
from the policyholder and stockholder the right to main-
tain an action for the appointment of a receiver for an
insurance corporation, the statute is very comprehensive
in its terms, and fails to provide any such right, except
to the stockholders, when a majority of them join to-
gether and seek the relief. If the legislature did not in-
tend that the remedy provided by the statute should be
made use of, there was no sufficient reason for providing
it. The remedy, if applied, is adequate to preserve the
rights of the stockholders and policyholders. Where the
remedy is adequate, it may be implied, that it was in-
tended to be exclusive. What effect the refusal of the
Commissioner to make an examination, after the affidavit
required by the statute has been filed before him; or after
the examination, refuses to institute an action, will have
upon the right of a stockholder or policyholder to main-
tain a suit for the appointment of a receiver of and a
settlement of the affairs of an insurance corporation is
not now decided, because the question is not before us;
but after a consideration of all the provisions of the
statute above mentioned and the remedies provided
therein, the evils sought to be corrected, and the objects
to be promoted, and the adequacy of the remedy, and
the evident purpose of the enactment of the statute and
the remedy provided, it seems that the legislative author-
ity intended that the remedy provided by the statute
should be exclusive of any other remedy, at least, where
not denied.

The opinion in Com. v. Richardson, 94 S. W. 639, 28
R. 632, and Richardson v. People's Life & Accident In-
surance Co., 92 S. W. 284, 28 R. 919, are overruled, so
far as they conflict with this opinion.

The judgment is therefore affirmed.

The whole Court sitting. Judge Turner dissenting.