## CARRINGTON v. KENTUCKY HOME MUT. LIFE INS. CO.

### No. 764.

District Court, W. D. Kentucky.
June 28, 1945.

Millard Cox, of Louisville, Ky., for plaintiff.

Woodward, Dawson, Hobson & Fulton and L. H. Hilton, all of Louisville, Ky., for defendant.

MILLER, District Judge.

The plaintiff Richard A. Carrington, Jr., as Trustee for the creditors of James E. Campbell, deceased, brought this action to recover of the defendant, Kentucky Home Mutual Life Insurance Company, on two life insurance policies of $5,000 each covering the life of James E. Campbell, subject to payments made by the defendant under the policies in the total sum of $6,649.95. The defendant denied liability for the unpaid balance by reason of a lien and interest accumulations arising out of re-insurance agreements under which it took over the policies in question previously issued by other life insurance companies.

On August 12, 1912, the Citizens National Life Insurance Company, a Kentucky corporation, issued to James E. Campbell, a resident of Oakfield, Georgia, its policy No. 21685–CN under the terms of which it insured the life of Campbell in the sum of $5,000 in consideration of the payment by Campbell of an annual premium of $160.30. On December 31, 1914, the Citizens National Life Insurance Company was consolidated with the Inter-Southern Life Insurance Company, a Kentucky corporation, which company assumed all the

liabilities of the Citizens National Life Insurance Company including the contingent liability under the policy above referred to on the life of Campbell.

On April 22, 1918, the Inter-Southern Life Insurance Company issued its policy No. 71356 to James E. Campbell under the terms of which it insured the life of Campbell in the amount of $5,000 in consideration of the payment by Campbell of an annual premium of $160.05.

Thereafter and while the aforesaid policies were in full force and effect, Campbell became financially involved with unpaid liabilities totalling $17,636.17. On March 18, 1922, Campbell assigned the two policies to W. H. Miller of Lynchburg, Virginia, as Trustee for his creditors. The Inter-Southern Life Insurance Company accepted the assignment. Thereafter Miller as trustee continued to pay the annual premiums on the policies.

In the early part of 1932 the Inter-Southern Life Insurance Company met with financial reverses and on April 16, 1932, the Circuit Court of Franklin County, Kentucky, appointed receivers for it. On August 8, 1932, the Kentucky Home Life Insurance Company, a Kentucky corporation, and the defendant herein under its later name of Kentucky Home Mutual Life Insurance Company entered into an agreement with the receivers of the Inter-Southern Life Insurance Company under which the Kentucky Home Life Insurance Company re-insured all of the outstanding policies of the Inter-Southern Life Insurance Company including the policies hereinabove referred to. Miller as trustee for the creditors of Campbell continued to pay to the defendant the annual premiums on the policies. Subsequently Miller resigned his trusteeship and the creditors chose in his stead as trustee the plaintiff Richard A. Carrington, Jr., of Lynchburg, Virginia. Upon assuming his duties as substituted trustee the plaintiff caused to be reassigned to him the two policies of insurance on the life of Campbell which assignment was made and accepted by the Kentucky Home Mutual Life Insurance Company on April 8, 1935.

Under the terms of the re-insurance agreement of August 8, 1932, a lien was placed against the cash surrender value of each Inter-Southern Life Insurance Company policy to the extent of 60% of the net equity thereof as defined in the agreement. The agreement provided in part as follows:

Clause 4—"* * *: however no deduction on account of such lien or interest shall be made from the amount payable on any death claim arising under any policy re-insured and/or assumed hereunder."

Clause 5—"The Company agrees that in the event of the death of any insured while his or her policy is in force, it will waive the aforesaid lien or any balance thereof remaining, and all interest accumulations thereon, and the cost of waiving such lien and interest shall be provided out of the unassigned funds and/or contingency reserve of the business of Inter-Southern reinsured hereunder. If, however, such unassigned funds and/or contingency reserve are insufficient to provide the cost of such waiver, then the Company will provide therefor out of its own surplus and/or earnings, but the Company shall be entitled to recover said sums so advanced, without any interest thereon, out of Inter-Southern assets, and nothing herein shall obligate the Company to maintain any reserve, legal or otherwise, to insure the waiving of liens by reason of the obligations assumed in this clause."

Clause 8—"* * * Nothing in this clause, however, shall be construed as relieving the Company from liability for payment of death claims without deduction on account of the lien."

Clause 34—"This Agreement may be amended by consent of the parties hereto with the approval of the Commissioner and the Franklin Circuit Court."

On March 16, 1935, and on the petition of the Kentucky Home Life Insurance Company the re-insurance agreement was amended so as to give effect to the fact that the defendant had become a mutual company and had changed its name to Kentucky Home Mutual Life Insurance Company. Clause 8 in this amendment was in the same words as Clause 8 in the original amendment. Clause 34 in this amendment provided as follows:

"This agreement may be further amended at any time from time to time by the Company and the Commissioner subject to the approval of the Franklin Circuit Court."

After the plaintiff succeeded Miller as trustee for the creditors in 1935 he found in the files that Miller turned over to him a circular letter to the policyholders of the

426

Inter-Southern Life Insurance Company dated September 22, 1932, and signed by William B. Harrison as President of the Kentucky Home Life Insurance Company. This letter enclosed the defendant's certificate of assumption of the outstanding insurance and contained the following statement:

"This certificate now forms a part of your policy of insurance and should be securely attached to the policy. It is your guaranty that the Kentucky Home Life Insurance Company will grant the benefits provided by your policy, subject to the terms of the re-insurance agreement. * * *

"Your attention is directed to the following important provisions of the attached re-insurance agreement:

"1. Death Claims Are Paid in Full, without deduction on account of the lien. * * *."

The file also contained a letter dated March 14, 1934, to Miller signed by S. C. Woods, Cashier of the Kentucky Home Life Insurance Company, which contained the following statement:

"This policy is in full force with this company and is subject to the reinsurance agreement whereby this company assumed the Inter-Southern business. * * * This company guarantees to give the same death benefit in connection with the policy that was previously enjoyed by the Inter-Southern Life Insurance Company and is responsible for the policy for its face amount at the death of the insured."

The file also contained a letter on the stationery of the Kentucky Home Life Insurance Company dated March 16, 1934, addressed to Miller and signed by "Hugh D. Hale, Policyholders Service Division," which contained the following statement:

"These policies, having been originally issued or assumed by the Inter-Southern Life Insurance Company, have been transferred to this Company. The death benefits were assumed in full, each policy being for $5,000.00 and carrying this payment to the beneficiaries, or the estate of the insured, are subject of course to the existing assignments without thus being affected or influenced by the failure of the former company. This Company is responsible for all Inter-Southern death losses and are paying these promptly in accordance with the terms of the policies. You can continue premium payments on death policies as these are due, feeling assured that the amounts as provided for in the policies will be paid at the death of the insured."

Under date of August 12, 1936, the plaintiff wrote the defendant asking for the correct cash value of the two policies and whether or not the policies would be paid in full upon death. He received in reply a letter of August 19, 1936, signed by Karl E. Rothrock, Manager of the Policy Loan Department, which gave the net cash value of Policy No. 21685–CN as of August 12, 1936, as $773.77, payable with 3½% interest after August 8, 1938, and the net cash value of Policy No. 71356 as of April 22, 1937, as $754.44, payable with 3½% interest after August 8, 1938. This letter also contained the following statement:

"By keeping the insurance in force there is available insurance protection for the gross amount of $10,000. In reinsuring this business we did not reduce the death benefit, nor did we increase the premium rates."

Under date of August 28, 1936, Karl E. Rothrock again wrote the plaintiff, replying to a letter from the plaintiff, making further inquiry about the two policies. In this letter Rothrock stated:

"As far as we are concerned, in the event of death while the policies are in force there will be payable the face amount of each policy, assuming that no loan indebtedness exists at the date of death."

The plaintiff would not have continued to pay the annual premiums under the policies if the death claims were not to be paid in full. As the annual premiums under the two policies became due he called upon the creditors of Campbell to contribute their pro rata share thereof which he collected and used to continue the payment of the premiums in order to keep the two policies in force and effect. The two policies of life insurance constituted the principal assets to which the creditors of Campbell could look to the payment of their claims.

On September 18, 1939, on petition of the Kentucky Home Mutual Life Insurance Company and the Commissioner of Insurance for Kentucky, the Franklin Circuit Court approved and made effective another amendment of the re-insurance contract of August 8, 1932. In this amendment the language contained in Clause 8 of the original agreement of August 8, 1932, and in the amendment of March 16,

1935, was eliminated entirely. Also the obligation to pay the death benefits contained in Clause 4 of the original agreement was eliminated and the application of the lien was described as follows:

"Both lien and interest thereon shall be deducted from (1) Any payment made by the Company under said policies; (2) Any settlement made by the Company under said policies."

The plaintiff had no notice of this proceeding in the Franklin Circuit Court or of the amendment of September 18, 1939, until the receipt by him of a letter from the defendant dated September 14, 1943, advising that the 60% lien with accumulated interest constituted an indebtedness against the policies including death claim settlements. James E. Campbell, the insured, died on May 27, 1944. At that time all the annual premiums called for by both policies had been paid and both policies were in force and effect.

On August 12, 1936, giving effect to the payment of the annual premium due at that time, the cash surrender value of Policy No. 21685–CN was $773.77. The premium paid thereafter under said policy with 6% interest to the date of the death of the insured amounted to $1661.58. On April 22, 1937, giving effect to the annual premium due on that date, the cash surrender value under Policy No. 71356 was $755.21. The premiums paid thereafter under said policy with 6% interest to the date of Campbell's death amounted to $1593.20. Under the terms of the re-insurance agreement cash surrender values were not payable until August 8, 1938.

Under the by-laws of the defendant and by the terms of the policies themselves only the President and Secretary had the power in behalf of the Company to make or modify the contract of insurance and the Company was not to be bound by any promise or representation given by any other person.

Following the death of Campbell the plaintiff duly proved his claim against the defendant under the two policies. The defendant admitted liability in the sum of $3400.85 under Policy No. 21685–CN and in the amount of $3,239.10 under Policy No. 17356, which were the net amounts payable after deducting the liens with accumulated interest. The defendant denied further liability on the ground that under the provisions of the re-insurance agreement as amended September 18, 1939, the policy lien applied against death benefits as well as against cash surrender values. Plaintiff accepted without prejudice the payments admitted to be due by the Company and instituted this action to collect the unpaid balance of $3,350.05 with interest.

The plaintiff contends that he had valid contracts of insurance calling for death benefits in the amount of $10,000 by reason of his payment of the premiums in consideration of the defendant's promise to pay the death claims in full as evidenced by the correspondence between the parties, and that in any event the defendant is estopped to change its position after the plaintiff acted upon its representations to that effect.

■ Policyholders in the Inter-Southern Life Insurance Company were not required to accept the terms of the reinsurance agreement of August 8, 1932, but such ones as did elect to become parties to that arrangement are bound by the terms of the agreement. Casteel v. Kentucky Home Life Insurance Co., 258 Ky. 304, 79 S.W. 2d 941. Miller, as trustee for the creditors of Campbell, by continuing to pay the premiums thereafter to the new insurer, elected to become a party to the reinsurance agreement and he and the plaintiff became bound by its terms. Kentucky Home Life Ins. Co. v. Leisman, 268 Ky. 825, 830, 105 S.W.2d 1046. One of the terms of the reinsurance agreement was that it could be changed or modified by the Franklin Circuit Court of Kentucky upon proceedings properly instituted and approved by certain parties and the Court. Accordingly, plaintiff's contract of insurance with the defendant, regardless of its original terms when accepted by his predecessor Miller and as thereafter continued by the plaintiff, was legally subject to modification without his later consent. His present complaint that his contract was so modified is accordingly without merit unless the defendant is estopped by reason of its representations to the plaintiff to rely upon the subsequent modifications so made. I do not find in the notices and letters sent to the plaintiff and his predecessor trustee any renunciation of the existing right of the Commissioner and the Court to modify the terms of the agreement upon the institution of proper proceedings to do so. The letter of September 22, 1932, from the President of the Company to Miller and the letter of March 14, 1934, from the Cashier to Miller both specifically referred to the fact that the

benefits provided by the policies and certificates of assumption were subject to the terms of the reinsurance agreement. The other letters outlined the benefits under the contract as it then existed. Even if they be construed as a waiver on the part of the Company of the right to subsequent modification with Court approval, which is not the construction placed upon the correspondence by the Court, such attempted waiver could not be validly made by the junior officers who wrote the letters. Connecticut Fire Ins. Co. v. Roberts, 226 Ky. 534, 11 S.W.2d 148; Prudential Ins. Co. of America v. Jenkins, 290 Ky. 802, 162 S.W. 2d 791. Accordingly, plaintiff's rights, if any, must rest upon the principle of estoppel rather than upon the existence of a contract differing from the terms of the reinsurance agreement as modified by order of the Court on September 18, 1939.

 One of the essential elements of estoppel is that the one relying on it was induced by the conduct of his adversary to change his status whereby he was deprived of rights which he otherwise would have possessed and which operated to his detriment. The evidence does not show that the plaintiff abstained from doing any act by reason of defendant's representations. The surmise that he may have taken out additional insurance if he had been advised that the policy would not be paid in full is only speculation. It is not shown that the insured was still an insurable risk at that time, or that the creditors would have been willing to advance the additional sum necessary to effect such insurance at the materially higher rate resulting from the increased age of the insured. By reason of the representations the plaintiff paid the premiums called for by the policies and carried them until the death of the insured. But in doing so he has not suffered any financial loss. The amount which the defendant has conceded to be due under the policies, less the premiums paid with interest, is more than what the plaintiff would have received by surrendering the policies for their cash surrender value at the time when the representations were made. The plaintiff may have been misled, but it was not to his prejudice. Both elements are necessary to constitute estoppel. Kentucky Home Life Ins. Co. v. Kittinger, 262 Ky. 525, 529, 90 S.W.2d 673, 103 A.L.R. 1361; Owens v. National Life & Accident Ins. Co., 234 Ky. 788, 793, 29

S.W.2d 557; 31 C.J.S., Estoppel, § 74. Accordingly, the defendant is not estopped by reason of the statements made to the plaintiff that the death benefits would be paid in full from now taking the position that death claims are not so payable.

The defendant is entitled to judgment in its favor.