UNITED STATES of America

v.

KENTUCKY HOME MUTUAL LIFE IN-SURANCE COMPANY.

No. 14150.

United States Court of Appeals
Sixth Circuit.

July 11, 1961.

**40**

Arthur I. Gould, Dept. of Justice, Washington, D. C., for appellant, Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., William B. Jones, U. S. Atty., James C. Jernigan, Asst. U. S. Atty., Louisville, Ky., on the brief.

Charles I. Dawson, Louisville, Ky., for appellee, Bullitt, Dawson & Tarrant, Louisville, Ky., on the brief.

Before McALLISTER, CECIL and O'SULLIVAN, Circuit Judges.

O'SULLIVAN, Circuit Judge.

As the conclusion of receivership proceedings had in the Circuit Court of Franklin County, Kentucky, plaintiff-appellee, Kentucky Home Mutual Life Insurance Company, hereinafter referred to as Kentucky, took over all of the assets of the insolvent Inter-Southern Life Insurance Company, hereinafter referred to as Inter-Southern. Kentucky entered into a re-insurance agreement with Inter-Southern, its receivers and the Insurance Commissioner of the State of Kentucky, whereby Kentucky agreed to assume Inter-Southern's liability to its policy holders, subject to the conditions in the re-insurance agreement.

As finally amended on September 18, 1939, the re-insurance agreement provided that a lien be imposed upon each of the re-insured Inter-Southern policies to the extent of 60% of the 1932 equity, or reserve, of each of such policies. The amounts of the liens on the respective policies were, from and after August 18, 1932, to bear interest, payable to Kentucky at the rate of six percent per annum, compounded annually.[1]

The re-insurance agreement provided that the Inter-Southern policy holders might pay off the amount of the lien in full or in part at any time, with a proportionate increase in the ultimate amount of insurance payable, and said policy holders could pay the interest as it accrued annually, or at any other time.

1. The rate of interest was reduced to 5% after September 30, 1939.

If such policy holder did not pay the lien and the interest as it accrued, any unpaid balance of the lien and accrued interest was to be taken from any payment to the policy holder either as cash surrender value, a loan, or in final settlement on the death of the insured.

In the tax year of 1952, Kentucky Home Life Insurance Company received as interest paid on the aforesaid liens the sum of $6,731.36. It offset against death claims paid in that year $43,197.34, representing accrued interest upon the liens against the policies upon which the death claims were paid in that year. Accrued interest was also offset against coupons on death claims in the amount of $835.69. It offset $2,209.16 against maturities in that year. It offset $13,886.79 as accrued interest against cash surrenders, and the sum of $1,142.30 as accrued interest against coupons on cash surrenders. These items totalled $68,-002.64.

Upon review of Kentucky's income tax return for 1952, the Commissioner assessed a deficiency of $16,652.27, being the tax payable on the said $68,002.64 interest so received, asserting that such amount was income received from interest, within the meaning of Section 201 (c) (1) of the 1939 Internal Revenue Code, 26 U.S.C.A. § 201(c) (1). The taxpayer paid this amount, which with interest totalled $18,803.99, and upon denial of its claim for refund, brought suit to recover the amount paid in the District Court for the Western District of Kentucky. The district judge gave a judgment for the plaintiff taxpayer.

The applicable tax statute, in defining taxable income, provides in Section 201, as follows:

"(c) Other definitions. In the case of a life insurance company——

"(1) Gross income—The term 'gross income' means the gross amount of income received during the taxable year from *interest*, dividends, and rents."

Kentucky contends that interest paid to it or accrued and offset against payments made by it in settlements on Inter-Southern policies in the tax year of 1952 was not "income received during the taxable year from interest" within the meaning of the tax statute.

In the receivership proceedings, it was found that the assets of Inter-Southern were so impaired that in order to set aside adequate reserves for the payment of the Inter-Southern policies as they matured, it was necessary to supplement such assets by the aforesaid liens against the reserve of each policy so reinsured. Pursuant to the re-insurance agreement, each lien was set up as an asset, thereby establishing reserves in the amounts required by the Insurance Commissioner of Kentucky; the liens were accepted by the Insurance Commissioner as assets to the extent of sixty percent of the reserves on the policies. By being given credit, as a deposit of assets with the Insurance Commissioner, for the sixty percent lien imposed upon each Inter-Southern policy, taxpayer was required to deposit securities and other assets (apart from the liens) only to the extent of forty percent of the legally required reserves. Thus, the deposit with Insurance Commissioner as needed reserves for all of the Inter-Southern policies consisted of policy liens to the extent of sixty percent and other assets for the additional forty percent.

By the terms of the re-insurance agreement, the Inter-Southern policy holders were permitted to pay off the amount of the lien in full or in part at any time. The policy holder could also pay the interest as it accrued annually, or at any other time. Some policy holders did pay off the liens. Others paid the interest currently to prevent an increase in the amount which would be offset in any settlement of benefits payable upon the Inter-Southern policies. In addition to any interest payable on the liens, the policy holders were required to pay in full whatever premiums were payable upon the policies on the basis of their full face value.

The re-insurance agreement did not reduce or wipe out any of the reserves that had been built up on the Inter-Southern

policies. It subjected such reserves to the liens on such policies. A lien cannot be placed against something which has been wiped out or does not exist. Kentucky re-insured the Inter-Southern policies in their respective full amounts, collecting premiums chargeable for such amounts of insurance, but conditioning its obligation to pay such policies to its right to offset against the amount so payable the sixty percent lien, together with any accrued and unpaid interest on such lien.

■ Taxpayer insists that it got no economic benefit from the interest earned upon the liens in question. We are unable, from the standpoint of economic benefit to Kentucky, to find any difference between the interest earned on these liens and the interest earned and realized on loans made by Kentucky to its policy holders. The obligation of a policy holder obtaining a loan upon his policy was an indebtedness repayable to the insurance company, with interest accruing on such indebtedness until it was paid. That obligation was secured by the reserve of the policy of the borrower. In the case of a re-insured policy holder of Inter-Southern, the lien imposed on his policy was identical in its impact on the benefits provided for him by his insurance contract with the consequences resulting to one who had borrowed upon the security of a policy. Such lien, for all practical purposes, became an obligation secured by, and payable out of, any maturity value of his policy. The Court of Appeals of Kentucky, in the case of Kentucky Home Life Ins. Co. v. Leisman, 268 Ky. 825, at page 828, 105 S.W.2d 1046, at page 1047, in considering the re-insurance agreement now before us, characterized these liens as loans:

"The substantial effect of this agreement, of course, was to set up a pool by the policyholders to meet the liabilities of the Inter-Southern *by placing a loan against each policy* * * *."

Each Inter-Southern policy holder who elected to continue as an insured by paying the full premium on his policy, in effect became a party to the re-insurance agreement and accepted the lien obligation imposed. A lien is a charge or encumbrance upon property to secure the payment or performance of a debt, duty, or other obligation. United States v. Phillips, 5 Cir., 1959, 267 F.2d 374, 377.

■ The economic benefits flowing to Kentucky from the interest earned on policy loans or liens were, in our opinion, identical. The Kentucky statute requiring the deposit of assets with the Insurance Commissioner to protect policy reserves treated money loaned on policies in the same manner as the liens involved here. KRS 304.832, in defining the assets needed to be deposited to protect reserve deficiencies and what assets were required to be deposited, says:

"* * * less any sums that it has advanced from its legal reserve to its policyholders on the pledge to it of their policies and any accumulations thereon."

Kentucky here got the same credit for its liens as it did for sums advanced to borrowers under the above statute.

The evidence in this case showed that the interest paid or accrued upon the liens in question was treated in Kentucky's statement of assets and liabilities in the same manner and with the same effect as interest received upon loans made to its policy holders. It qualified this admission by saying that interest received on liens and interest received on loans was treated "mechanically" the same. However, it did not point out where there was any difference in substance.

Kentucky further argues that the interest in question should be treated as in the nature of premium payments because as such interest was paid it increased the amount of insurance that would ultimately be payable to policy holders. However, the full premium payable upon each insurance contract was paid by the policy holder in addition to the interest charges upon the lien. It is true that by paying the interest on the lien currently the policy holder would increase the amount that would be payable

upon maturity of the policy. Such, indeed, is the consequence, always, where a mortgagor or lienor pays the interest on a mortgage or lien. The payment of such interest protects the equity value of such asset subject to the lien or mortgage.

Interest has been defined as, "the compensation allowed by law, or fixed by the parties, for the use, detention, or forbearance of money or its equivalent." 30 Am.Jur., Interest, Sec. 2. We are of the opinion that the interest received by Kentucky on these liens came substantially within such definition. Such interest was required to be paid by the policy holders if they desired to maintain the liens in status quo. By submitting to liability for such interest, they obtained forbearance from the necessity of paying up the liens prior to settlement on the policies. By electing to continue their policies in force, they became parties to the re-insurance agreement which fixed their liability for such interest. As stated in the taxpayer's brief, "under the law of Kentucky, * * * the Insurance Department speaks and acts for every policyholder." Kentucky Home Mutual Life Insurance Company v. Leitner, 302 Ky. 789, 196 S.W.2d 421; Grimes v. Central Life Insurance Company, 172 Ky. 18, 188 S.W. 901; Breckinridge v. Kentucky Central Life & Accident Insurance Company, 206 Ky. 244, 267 S.W. 178.

The question involved here does not appear to have been involved in any previous litigation, and we have no regulations, opinions of the Revenue Department, or decided cases to guide us. We, however, are of the opinion that the interest upon which the tax involved here was imposed was what it was called by all parties involved—interest—and was, therefore, subject to income tax as provided by the applicable statute.

The judgment of the District Court is reversed, with direction that judgment be entered in favor of the United States.

CECIL, Circuit Judge (concurring).

I concur in the opinion of Judge O'SULLIVAN.

A legal reserve life insurance company is required by law to maintain a reserve fund for the protection of its policy holders. This fund is made up of a portion of the current premiums and the income from the investments in the reserve. The amount of this reserve is fixed by law. It is intended that if a policy holder lives out his expectancy, there will be sufficient assets in this reserve against his policy to pay the face of the policy. When a policy holder does not live out his expectancy, the amount of the face of the policy, over and above the reserve against it, is paid from other funds of the company, sometimes called a mortality fund.

When a policy is terminated either by a death claim or through accepting the cash surrender value, or when a loan is made against that policy, the insurance company may draw down the amount of the reserve and put it in the general funds or some special fund of the company.

As a part of the reinsurance agreement in this case, the insurance commissioner required that Kentucky Mutual set up the reserve in the full amount required by law. Since the assets of Southern were sixty percent short, there was placed against each policy a lien equal to sixty percent of the net equity of such policy. It was provided in the first agreement that this lien should be increased at the rate of six percent per year compounded annually. An amended contract with which we are now concerned fixed this interest rate at five percent.

A policy holder could pay off this lien in full or pay it off partially, or pay the annual interest. If he made no payments, the lien was increased by the annual interest additions, at compound interest.

In the year with which we are concerned, in the settlement of a policy either by cash surrender or payment of a death claim, the Kentucky Mutual was entitled to deduct the amount of this lien plus any accumulated interest from the amount owed the policy holder.

Assume, for example, that in the taxable year in question the five-percent interest provided in the contract on the lien in a certain policy amounted to $300. If the policy holder did not pay that during the year, Kentucky could add that amount to the total of the then existing lien. It could then have drawn down $300 from the actual reserve on deposit with the Commissioner. This sum could be mingled with its other funds and would be free or unrestricted of any requirement of the reserve. If at the end of the year the policy holder chose to take the cash surrender value of his policy he would get $300 less than he would have received before the accumulated interest was added. The same is true if it had matured as a death claim. The beneficiary would receive $300 less after the accumulated interest was added.

If the policy holder had paid the $300 interest, the amount of the lien would have remained the same and the relationship between the reserve on deposit and the lien would have been maintained. This would have been $300 in the unrestricted funds of Kentucky Mutual.

In either case, whether the $300 is paid or not, the Company has received that amount of income. In reality the five-percent interest provided by the contract was in lieu of the income the company would have earned on its investments if the sixty percent represented by the lien had actually been in the reserve. The income on the investments of the reserve must be included in gross income under Section 201(c) (1), Title 26 U.S.C., Internal Revenue Code of 1939. An insurance company is, however, allowed a credit on this reserve. The entire net income of an insurance company is taxable subject to a formula provided by Section 202 of the above act. See examples under Section 39.202–1(a) (b) Federal Tax Regulations of 1956. (Applicable to the 1952 taxable year.)

It is argued for the taxpayer that it performed its agreement with the insurance commissioner and that it received nothing but what was provided in the contract. This is true but I find nothing inconsistent with the taxpayer making an income on some provision of the contract. The government was not a party to the contract.

McALLISTER and O'SULLIVAN, Circuit Judges, also concur in the opinion of CECIL, Circuit Judge.